The judgment is therefore reversed, and the cause is remanded for a new trial.

ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILROAD COMPANY *v.* LANDERS.

Opinion delivered March 3, 1900.

STOCK-KILLING—WHEN PRESUMPTION OF NEGLIGENCE OVERCOME. — Where the *prima facie* case of negligence, made by proof of the killing of a steer by a railroad train, is clearly overcome by the testimony of the engineer and fireman, which is consistent and reasonable, and there is no other evidence of negligence, a verdict for the plaintiff will be set aside.     (Page 516.)

Appeal from Poinsett Circuit Court.

FELIX G. TAYLOR, Judge.

### STATEMENT BY THE COURT.

This suit was commenced in a justice-of-the-peace court, by the filing of the following account:

"St. L., I. M. & So. Ry. Co. to W. C. Landers.

"To damages for killing one two-year old steer on the 6th

day of July, 1896, at a public crossing in the town of Harrisburg, valued at $10.                         W. C. LANDERS."

Defendant made default, and judgment was rendered in the justice's court for the amount sued for, and the defendant appealed. In the circuit court the case was tried anew.

Jim Goodloe testified that he was in his house near the right of way when he heard the ringing of the engine bell and the blowing of the whistle several times. He immediately went out of his house to the railway crossing, and saw the yearling turn down from the crossing. The train was running tolerably slow, and the engine struck it. When he first saw the steer, it was about thirty feet in front of the engine. He knew nothing about the value of the animal.

Jack Grant lived near the railroad track, south of Goodloe's. His attention was attracted by the signals and ringing of the bell. He looked, and saw the steer from twenty to forty feet in front of the engine, south of the middle crossing. He was one hundred and fifty feet from the animal. Saw the engine strike it, and knock it off the track. The train was running pretty fast.

Ed Liliker did not see the animal struck, but hauled it off after it was killed. The steer was about eighteen months old.

This was all the testimony in favor of the plaintiff.

The engineer testified: "That he saw the steer just as it came on the track. He was about fifty or sixty feet from it when he first saw it. The steer was just coming on the crossing. I whistled for the crossing, the fireman was ringing the bell, and I whistled the stock alarm as soon as I saw it, and set the brakes. Was going between fifteen and eighteen miles an hour. Was looking ahead. I saw the animal as soon as it came in range of my vision. It seemed to be walking leisurely, and, as soon as I whistled, it turned, and ran down the track. The fireman was sitting on the fireman's seat, if I recollect right, ringing the bell. Nothing else could have been done to avoid striking the animal. I had the train under control. The steam was shut off. The train was drifting,—running by its own momentum. The engine had all the modern appliances. I applied all my air when I saw the stock. Going at the rate of speed I was run-

ning with the steam shut off, it would require two hundred and fifty feet to bring the train to a standstill. My train was about three hundred and fifty feet long. With the air applied, steam shut off, and drifting, the train will run between two hundred and twenty five and three hundred feet before I can stop it. A train like mine, drifting as I have described, would run about thirteen hundred and twenty feet in a minute,— about fifteen miles an hour. We run from twenty to forty five or fifty miles an hour with steam on and air brake off."

G. B. Reed, the fireman, testified: "That he was ringing the bell; that he saw the animal standing on the edge of the road crossing, at a little ditch for the side track, about fifteen feet from the track the train was on. He saw the animal turn, look and start towards the track, and then start down the track. The train was running fifteen miles an hour. When he first saw the yearling, it was about seventy-five feet from him, on the outside of the side track, about fifteen feet from the main track. The animal got about twenty feet south of the crossing when it was struck."

This was all the evidence. There was a verdict and judgment for ten dollars.

*Dodge & Johnson*, for appellant.

The rebuttal of the *prima facie* case of negligence exonerated the company. 51 S. W. 319; 53 Ark. 96; 62 Ark. 182; 43 Ark. 225; 14 Am. & Eng. R. Cas. (N. S.) 34; 14 Am. & Eng. R. Cas. (N. S.) 30; 83 Ga. 393.

WOOD, J., (after stating the facts.) The *prima facie* case of negligence made by proof of the killing was clearly overcome by the testimony of the engineer and fireman, which was consistent and reasonable. The jury could not arbitrarily disregard it. *K. C. F. S. & M. Ry.* v. *King*, 66 Ark. 439; *Ry. Co.* v. *Shoecraft*, 53 Ark. 96; *St. Louis S. W. Ry. Co.* v. *Russell*, 62 Ark. 182; *Memphis & L. R. Rd. Co.* v. *Sanders*, 43 Ark. 225; *St Louis, I. M. & S. Ry. Co.* v. *Bragg*, 66 Ark. 248; *Cantrell* v. *K. C. M. & B. Ry.* 14 Am. & Eng. Ry. Cases (N. S.), 30; *Ga. M. & G. Ry.* v. *Harris*, 83 Ga. 393.

Witnesses for plaintiff fail to establish any negligence whatever.

The judgment is reversed, and the cause is remanded for a new trial.