LANE *v.* KANSAS CITY SOUTHERN RAILWAY COMPANY.

Opinion delivered March 24, 1906.

RAILROAD—STOCK CASE—REBUTTAL OF PRESUMPTION.—The *prima facie* case of negligence, made by proof of the killing of an animal by a railroad train, may be overcome by rebutting evidence of the engineer which is consistent, reasonable and uncontradicted.

Appeal from Polk Circuit Court; *James S. Steel,* Judge; affirmed.

STATEMENT BY THE COURT.

Appellant sued the appellee for damages growing out of the alleged negligent killing by appellee of two mules, the property of appellant.

The testimony on behalf of appellant by a witness to the accident was as follows: "From the point where I was sitting, the track looking in the direction of Mena was very nearly straight for as much as one and one-half miles or more. I noticed the train when it first came in sight. When I stopped, I noticed the mules in question just below me in the direction of Rust Station. They were on the right of way, grazing, and about 25 or 30 feet from the track with their heads from the track, and continued to feed from the track when the train came and passed between us on the same side of the track the mules were on. At the outer boundary of the right of way was a fence. This fence was a part of the inclosure of a field on that side of the track. This fence extended north in the direction of Mena, running along the outer limit of the right of way 100 yards or more, and the same fence extended south in the direction of Rust about 100 yards. The whole continuous line of fence was 200 yards or more; was just outside of and parallel with the right of way. The track at the point near where the mules were grazing is slightly higher than the right of way on which it is located. On the right of the track going south there is no fence. The point where I was resting was about 100 yards from where the mules were grazing, as well as I could estimate. There were two telegraph poles between where I was sitting and the space occupied by the mules, and I was half way between the

second pole and the pole beyond in the direction of Mena. Apparently the train was running at its regular speed; and, when it reached a point about 100 yards beyond and in the direction of Mena from where I was sitting, the engineer whistled, and then there were no more whistles until they got right up on the mules. After the train passed where I was sitting, it came between me and the mules, and I saw the mules no more until the train struck and knocked them off the track."

There was proof of the value of the animals. Appellant testified: "That at the place where the mules were killed was a fence on the edge of the right of way, and a deep ditch in front on the same side they were on, and there was no way for them to run except across the track; and that no obstruction was on the right of way."

The testimony of one Hager on behalf of the appellee was as follows: "I am an engineer on the Kansas City Southern Railroad. I was engineer on the train that killed the mules in question. I saw the mules about one mile before we reached the place where they were. They seemed to be feeding, and on the right of way some thirty or forty feet from the track with their heads turned from the track. The train was running about 25 miles per hour. I blew the whistle at a road crossing about the time I came in sight of the point where the mules were feeding on the right of way. The mules were some thirty or forty feet from the rails, and were feeding with their heads turned away from the tracks as long as they were in my line of vision. As engineer I was on the right side of the engine. Immediately after the animals passed out of my line of vision on the left side, my view being cut off by the front of the engine, my fireman told me that the mules were attempting to cross the track in front of the engine. I immediately sounded the whistle, and at that instant saw the mules as they came in my line of vision approaching the track, and they were only about 20 or 30 feet ahead of the engine at that time and in a dead run. The mules had time after my line of vision had passed them to turn and run towards the track, but it was impossible to stop the train so as to prevent the killing of the mules after they started toward the track. I did not see them start towards the track, but they

did not start toward the track until my line of vision had passed them. If brakes had been put on at the instant that my vision passed them, and every other means had been used to stop the train, it could not have been stopped in time so as to have prevented killing the mules. At the same time the mules passed out of my line of vision, they were not more than 50 yards ahead of the engine. I mean that a straight line drawn from where the mules were would have struck the track not more than 50 yards ahead of where my engine was at the time my line of vision passed the mules. It would have done no good to put on the brakes or to have reversed the engine, because it would not have been possible to have stopped the train in time to prevent the killing of the mules. The only thing that could have been done was to sound the whistle, and I did that fully so as to scare the mules away after they had started towards the track."

The court instructed the jury to return a verdict for the appellee.

*J. I. Alley* and *R. G. Shaver,* for appellant.

The burden was upon the appellee to show that the lookout statute had been complied with. Kirby's Digest, § 6607. This was a question of fact for the jury to determine from the evidence. The mules being on the right of way, near the track, and close enough to indicate danger, it was the duty of those in charge of the train to use all available means to prevent injury. 68 Ark. 32; 75 Ark. 560.

*S. W. Moore* and *Read & McDonough,* for appellee.

The evidence completely rebuts the presumption of negligence on the part of appellee. 69 Ark. 619; 66 Ark. 441; 53 Ark. 96; 67 Ark. 516. The engineer's testimony was fair and reasonable, and he is shown to have exercised every precaution at his command. There was nothing to submit to the jury.

WOOD, J., (after stating the facts.) There was no error in the court's ruling. The cases of *St. Louis S. W. Ry. Co.* v. *Costello,* 68 Ark. 32, and *St. Louis & S. F. Rd. Co.* v. *Carlisle,* 75 Ark. 560, are not applicable. In those cases the statutory presumption of negligence arising from the killing was not overcome by the proof. On the contrary, the evidence in the latter case tended affirmatively to show negligence on the part of the

railway company.   The case at bar is ruled by the principle announced in *St. Louis, I. M. & S. Ry. Co.* v. *Landers,* 67 Ark. 514.

Here the statutory presumption of negligence is fully overcome by the testimony of the engineer, which is consistent, reasonable and uncontradicted in essential points.   Indeed, it is corroborated by the testimony of appellant's witness.   The engineer and fireman did not fail to keep a lookout.   They saw the animals feeding on the right of way thirty or forty feet from the track.   But the animals had their heads turned away from the track, and seemed to be going from it, as long as they were in the line of vision of the engineer, who continued to observe them, and not until they had passed out of his line of vision did they become confused and suddenly turned toward the railway track.   Whereupon the fireman notified the engineer. Then he did everything in his power that could be done to avoid injuring them.   Unless the testimony of appellee's witness could be arbitrarily disregarded, which can not be done, we do not see how the court could have ruled otherwise.   *St. Louis, I. M. & S. Ry. Co.* v. *Landers, supra,* and cases cited.   It was not the duty of the engineer to slow down or take other precautionary measures for the protection of the animals until their presence upon the track or in proximity thereto indicated that they were in danger.

Affirm.