St. Louis, Iron Mountain & Southern Railway Company
v. Erwin.

Opinion delivered May 24, 1915.

Railroads—Injury to stock on track.—Evidence held to show that when a railway train ran into and killed certain horses which were on the right-of-way, that the engineer and fireman were either not keeping a proper lookout, or upon discovering that the stock was on the track, failed to make an effort to stop the train.

Appeal from Drew Circuit Court; *H. W. Wells,* Judge; affirmed.

*E. B. Kinsworthy, James C. Knox* and *T. D. Crawford,* for appellant.

The evidence does not make out a case of liability. The testimony of the engineer as well as that of the fireman, was consistent, and uncontradicted, and their testimony shows that the killing of the stock was unavoidable. No negligence is shown.   80 Ark. 396; 89 Ark. 120.

*Williamson & Williamson,* for appellee.

The verdict of the jury is justified by the evidence and will stand.   In order to rebut the statutory presumption of negligence, it was necessary for the appellant to show that the engineer and fireman were not guilty of negligence, whereas the fireman, who could have seen the stock, had he kept the lookout on his side, did not do so because he was not at his post.   64 Ark. 236; 45 Ark. 295; 54 Ark. 214; 57 Ark. 192; 75 Ark. 61; 76 Ark. 37; 78 Ark. 252; 79 Ark. 247; 80 Ark. 273; *Id.* 284; 81 Ark. 605; 85 Ark. 121; 116 Ark. 47.

Hart, J.   On June 28, 1914, about 3 o'clock in the morning, the north-bound passenger train of appellant, consisting of an engine and five coaches, ran into a herd of twelve or fifteen head of horses and mules at a road crossing just north of Tillar.   Four mules and one mare belonging to appellee were killed.   This suit was brought to recover damages therefor.   The jury returned a verdict for appellees, and, to reverse the judgment, appellant prosecutes this appeal.

It appears from the record that the railroad was fenced at the crossing where the stock were killed; that the stock had been down in the bottoms and were on their way home; that the tracks at the crossing tended to show that twelve or fifteen head of stock had stopped there on the west side of the railroad and the crossing looked like horses had been stamping around there all night.

Four of the animals were thrown over the fence, two of them on each side, about 150 feet from the crossing and about forty feet from the right-of-way. The mare was thrown up against the fence but not over it. The crossing where the stock was killed was thirty or forty feet wide. The mare weighed about 1,100 pounds. Three of the mules weighed about 800 pounds each; the remaining mule about seven hundred pounds. Their value was testified to by the owners.

Both the engineer and the fireman testified for appellant. They said that they whistled for the crossing and that the railroad track curves to the right just before the crossing is reached; that the headlight was burning brightly and that the engineer did not discover the animals on the track until he was in two or three hundred feet of them; that he was keeping a lookout, and just as soon as he saw them applied the brake in emergency but was unable to stop the train before it reached them. He said that the train never did come to a full stop; that they were going at the rate of between twenty and thirty miles an hour, and that it would have required 650 feet to stop the train after the emergency brake was applied.

At the time the accident happened the fireman was down shoveling coal but raised up as soon as he heard the stock alarm signal sounded.

It is earnestly insisted by counsel for the appellant that the *prima facie* case of negligence against appellant was overcome by the testimony of the engineer and fireman; but we do not agree with them. The evidence shows that there were twelve or fifteen head of stock which had stopped at the crossing and their tracks showed that they were resting there. All except five of them suc-

ceeded in getting off the crossing. These were all pretty good sized stock. The crossing was thirty or forty feet wide and there was a fence on each side of it. The testimony shows that two of the mules were thrown through the fence on one side and two on the other. The mare was also thrown up against the fence. Under these circumstances the jury was justified in finding that the train approached the stock without any effort being made to check its speed.

The evidence shows that the land west of the crossing was cleared for a considerable distance and that there was a field there. That there was timber to the east of the crossing; but that for about 100 yards there were but few trees. When the situation of the stock and the surrounding circumstances are considered, the jury was warranted in finding that the engineer and fireman were not keeping the proper lookout, or that when they discovered the stock on the track at the crossing they made no effort to stop the train.

The judgment will be affirmed.