STEPTOE v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN

RAILWAY COMPANY.

Opinion delivered May 31, 1915.

1. CARRIERS—INDUCING PASSENGER TO ALIGHT FROM TRAIN.—A carrier of passengers must be careful not to invite or mislead its passengers into alighting at an improper place. If its servants, in the charge or management of a train, induce its passengers to reasonably believe that the train has stopped, and that they are invited to alight, and if the passenger in so doing is injured while he is in the exercise of due care and diligence, the company will be liable.

2. CARRIERS—INJURY TO PASSENGER ALIGHTING FROM TRAIN.—In an action for damages caused by an injury to plaintiff, a passenger, received while alighting from a caboose at an improper place, the plaintiff testified that the conductor told him that he had reached his station and to alight. The conductor testified that he did not tell the plaintiff either of these facts. *Held*, it was a question for the jury to determine whether the conductor did make such statements to the plaintiff, inducing him to alight.

3. CARRIERS—PASSENGER ON CABOOSE—INJURY FROM ALIGHTING AT WRONG PLACE.—Whenever a train has stopped, and any statement is made to a passenger on a freight caboose, by the person in charge of the freight train, which amounts to an assurance that that is the place where he is expected to alight, and that the train has stopped for that purpose, then the passenger has a right to assume that the opportunity to debark has been made safe, and

a passenger injured under those circumstances is entitled to recover unless his injuries are attributable to his own negligence.

4. Carriers—injury to passenger alighting at wrong place.—Plaintiff, a passenger on the caboose of a freight train, was injured when he debarked from the caboose at a point below the regular station. *Held*, if the plaintiff was induced by the conductor to believe that the caboose had stopped at the proper place for him and his companion to debark, then he is not precluded from recovery merely because he could, by the exercise of ordinary care, have known that he was not at the station, or not at the place where it was intended for him to debark.

5. Witnesses—duty of jury to consider testimony—single class of witnesses.—In an action for damages for personal injuries, against a railroad company, when several witnesses testified on the behalf of the defendant, an instruction was proper which told the jury that the mere fact that a witness is in the employ of the defendant, there being no other circumstances establishing an interest, that they must not arbitrarily disregard his testimony.

Appeal from White Circuit Court; *J. M. Jackson,* Judge; reversed.

*J. W. & J. W. House, Jr.,* for appellant.

1. It was error to refuse the modifications to the instructions requested by defendant, as asked by the plaintiff. The modifications asked merely embodied the rule that carriers must be careful not to invite or to mislead passengers into alighting at an improper or dangerous place. If a carrier, or its servants, induce passengers to believe the train has stopped, and they are invited to alight, and the passenger is thereby injured the carrier is liable. 99 Ark. 248. It is error to give instructions about which there is no issue. 69 Ark. 489; 67 *Id.* 147; 77 *Id.* 234; *Ib.* 261, etc.

2. It is the duty of a carrier that it should be exceedingly careful to see that passengers are not injured, and if the train stops before the caboose reaches the station, it is the duty of the person in charge to notify passengers when they are to alight. 84 Ark. 81; 87 *Id.* 581; 88 *Id.* 325; 87 *Id.* 101; 59 *Id.* 122; 95 *Id.* 220.

3. The instructions are inconsistent and erroneous. 79 Ark. 12; 83 *Id.* 202; 94 *Id.* 282; 89 *Id.* 213; 69 *Id.* 134; 65 *Id.* 64; 95 *Id.* 506; 96 *Id.* 311.

4. There is no difference as to liability between a local freight and passenger train. 44 Ark. 322; 88 *Id.* 225, and cases *supra.*

5. An erroneous instruction is not cured by giving a correct one on the same subject. 87 Ark. 364; 88 *Id.* 550; 89 *Id.* 213; 99 *Id.* 377; 100 *Id.* 433; 101 *Id.* 37; 105 *Id.* 223; 107 *Id.* 245.

6. Abstract instructions should not be given. Nor should the court single out a certain class of witnesses, or particular class of testimony, and refer to them in its instructions. 59 Ark. 122; 99 *Id.* 69; 103 *Id.* 21; 105 *Id.* 467; 62 *Id.* 286-312; 99 *Id.* 69-77.

7. The instructions asked by plaintiff and given covered every question arising in this case. 104 Ark. 67; 109 *Id.* 5-10. The fact that defendant plead contributory negligence is an admission of negligence. 99 Ark. 377.

*Troy Pace, P. R. Andrews* and *W. G. Riddick,* for appellee.

1. Each side has a right to have its theory of a case presented to the jury under proper instructions. 87 Ark. 243; 96 *Id.* 206; 92 *Id.* 394. There was no conflict.

2. It is not error to refuse abstract instructions. The assumption of undisputed facts is not error in an instruction, nor is it error to submit to the jury hypothetical instructions upon facts about which there is no dispute. 67 Ark. 147; 104 *Id.* 196; 89 *Id.* 178; 91 *Id.* 475; 95 *Id.* 506.

3. One who takes passage upon a freight train assumes the inconveniences and risks usually and reasonably incident to travel on such trains. The appellee's instructions correctly stated the law. 76 Ark. 520; 98 *Id.* 494; 93 *Id.* 119; 94 *Id.* 75; 6 Cyc. 614; 76 Ark. 356; 75 *Id.* 211. A carrier is not required to stand guard over its passengers as if they were unable to protect themselves in the ordinary conditions of travel. 76 Ark. 356; 75 *Id.* 211; 6 Cyc. 614.

4. It is true that the announcing of a station followed by a stop of the train, is an implied invitation to

passengers to alight, etc., but the instructions for defend-
ant correctly declared the law on this question.   46 Ark.
322; 88 *Id.* 325.   But it is not negligence *per se,* and does
not excuse contributory negligence.   67 Ill. 398; 31 L. R.
A. (N. S.) 629; 16 Am. St. 63; 75 Ark. 165; 113 Ga. 1021;
57 L. R. A. 890; 97 Am. St. 666; 19 N. Y. Sup. 516; 5 Am.
Negl. Cases, 529; 88 Cal. 86; 2 Am. Negl. Cases, 191; 81
Ill. 19; 92 Ala. 237.   Here plaintiff was familiar with the
operation of trains and stopping places.   2 Am. Negl.
Cases, 608, 69; 92 Ala. 237; 97 *Id.* 332; 6 Am. Negl. Cas.
308; 71 Tex. 274; 4 Am. Negl. Cas. 322-326; 96 Ind. 346;
38 N. J. L. 137; 87 Am. Dec. 668.

McCULLOCH, C. J.   This is an action instituted by
the plaintiff, C. H. Steptoe, against the defendant rail-
way company to recover for personal injuries alleged to
have been sustained by plaintiff while alighting from the
caboose of a freight train on which he was a passenger.
The jury returned a verdict in favor of the defendant and
the plaintiff has appealed.

Plaintiff was a traveling salesman, and took passage
on defendant's local freight train at Calico Rock, a sta-
tion on the White River branch, and paid his fare to
Guion, another station twenty or thirty miles distant.
The train contained twenty-one cars besides the caboose,
and arrived at Guion about 8 o'clock in the evening.
It was on January 28, 1914, and was therefore after dark
when the train reached Guion, the night being a dark one.
The train came to a stop with the caboose 668 feet dis-
tant from the station, and the caboose, when it came to a
stop, was standing on a trestle twenty-two feet high.
Plaintiff and another traveling man were the only pas-
sengers and they attempted to alight from the caboose
at that place, and they contend that they did so upon the
invitation of the conductor and his assurance that it was
a proper place for them to debark.   When plaintiff at-
tempted to alight from the steps of the caboose, he fell
to the ground below and received very severe injuries.
Plaintiff testified that when the train whistled he asked
the conductor, "Are you going into Guion?"   And that
the conductor replied, "Yes;" that after the train came

to a stop he and his companion picked up their suit cases and passed the conductor, who was sitting at his desk in the caboose writing, and that they asked the conductor, "Is this Guion?" and that the conductor replied, "Yes, this is the place." He testified that the conductor was sitting there and saw him and his companion pass out on the platform for the purpose of getting off the train. Plaintiff's companion testified concerning the incident and narrated the same facts upon the witness stand that plaintiff did. There is a sharp conflict in the testimony and the jury might have found either way upon the testimony. The conductor testified that the only conversation he had with plaintiff or his companion was that when the train whistled for Guion, the caboose then being as much as a mile distant from the station, one of the passengers, either plaintiff or his companion, asked, "What is this?" And that he (conductor) replied, "It will be Guion when we get there." The conductor testified that he immediately went up in the cupola of the caboose and out on the roof and proceeded along the top of the cars for the purpose of reaching the front end so as to be there when the train stopped, and that he was on top of one of the cars, within three or four cars of the engine when the train came to a stop. He denied positively that he was in the caboose at the time the train stopped or had any conversation with plaintiff or his companion except that just related. He is corroborated by several of the trainmen who testified that they saw the conductor on top of the boxcars going toward the engine before the train stopped. The defendant also introduced a written statement purporting to have been made by the plaintiff at his home a few days after the injury occurred, and the narrative of facts in that written statement is in direct conflict with what the plaintiff testified on the witness stand. However, the plaintiff denied that he made that statement, or rather he stated that he had no recollection of signing it, and that if he did so he was not conscious of it. He said that he was sick at home and suffering from his injuries and was not in a condition mentally to give

any statement or to recollect the details of the one that was given.

(1-2-3)   Now, it is clear from the above statement of the testimony in the case that the jury would have been warranted in returning a verdict either for the plaintiff or for the defendant, and a verdict in favor of either would not be set aside as being without support from the testimony.   The testimony, in other words, brought the plaintiff within the following statement of the law made by this court, which would have entitled him to recover:   "A carrier of passengers must be careful not to invite or mislead its passengers into alighting at an improper place.   If its servants in charge or management of a train induce its passengers to reasonably believe that the train has stopped, and that they are invited to alight, and if the passenger in so doing is injured while he is in the exercise of due care and diligence, the company will be liable."   *Chicago, R. I. & P. Ry. Co.* v. *Claunts,* 99 Ark. 248.   The evidence adduced by the plaintiff tends to show a statement and conduct on the part of the conductor which amounted to an invitation to him and the other passengers to alight at that time and an assurance that it was a safe place for them to alight from the train.   If the testimony of the conductor was true, his conversation with the plaintiff and statement to the plaintiff did not amount to an invitation to alight or an assurance that it was a safe place at which to do so.   Even the plaintiff's own narrative of the facts does not make it conclusive as a matter of law that there was an invitation to him to alight, but it certainly was a question for the jury to determine whether the statement made to him by the conductor amounted to such an assurance.   According to his testimony, he asked the conductor, after the train had come to a stop, whether or not that was Guion, and that the conductor replied, "Yes, this is the place."   And he said that the conductor was sitting there and saw him and his companion start to leave the caboose.   The above quotation from the Claunts case is a mere reiteration in substance of the doctrine announced by this court in many other cases.   *Memphis & L. R. Ry. Co.* v. *Stringfellow,* 44

Ark. 322; *Ry. Co.* v. *Johnson,* 59 Ark. 122; *Davis* v. *K. C. S. Ry. Co.,* 75 Ark. 165; *K. C. S. Ry. Co.* v. *Davis,* 83 Ark. 217; *St. Louis, I. M. & S. Ry. Co.* v. *Glossup,* 88 Ark. 225. It was held in those cases that the announcement of the station and the stopping of the train constituted an implied assurance to the passengers that the train had stopped to enable them to debark, "unless the circumstances and indications make it manifest that the proper and usual stopping place has not been reached." *Davis* v. *K. C. So. Ry. Co., supra.* Those were all cases in which the plaintiff had been a passenger on a regular passenger train, and not a freight train carrying passengers, but the principles of law are the same, except that there are certain extra hazards of traveling on a freight train which the passenger assumes and the circumstances may not always warrant the same inference. It is undoubtedly correct, as a matter of law, however, to say that whenever the train comes to a stop, and there is any statement made to the passengers on a freight caboose which amounts to an assurance that that is the place that they are expected to alight, and that the train has stopped for that purpose, then the passengers have a right to assume that the opportunity to debark has been made safe, and a passenger injured under those circumstances is entitled to recover unless his injuries are attributable to his own negligence.

(4)   The court gave correct instructions at the plaintiff's request, submitting the issues to the jury. All of the instructions requested by plaintiff, save one, were given. The court also gave nearly all of the instructions requested by the defendant, and the assignments of error relate mainly to those instructions. The plaintiff objected to the instructions and also asked the court to modify the same by adding words which qualified them so as to make them conform to the instructions requested by plaintiff, but the court refused the modification in each instance. We deem it necessary only to set out one of those instructions and the requested modification, as we have reached the conclusion that that is the only instruction which is in conflict with those given at the instance of the plaintiff.

It is instruction No. 6, and reads as follows: "If you find from the evidence in this case that the plaintiff had had occasion to travel over the defendant's line of railroad upon which he was injured for a number of years prior to date of his injury, and was familiar with the stations along said line, including the station of Guion, where he alleges he was injured, and that he knew or by the use of ordinary care could have known, that he was not at the station of defendant at Guion, or the place provided by defendant at such station for discharging passengers, and that he undertook to alight from said train, before he reached said station, and in a dangerous place, and at a place not intended by defendant for discharging passengers, then he would not be entitled to recover, and your verdict should be for the defendant."

The plaintiff, in addition to its exceptions to that instruction, asked the following modification: "Unless you further find from the testimony that the acts, words and conduct of conductor W. M. Case were such as would reasonably cause the plaintiff to believe they had reached a reasonably safe place to alight, and plaintiff did so believe, and undertook to alight, and in doing so, while in the exercise of ordinary care, was injured." We think this instruction was, as before stated, in direct conflict with the correct instructions given at the instance of plaintiff, and it was error to give the instruction without the modification requested by plaintiff or a similar one. The court had already given appropriate instructions embodying the statements contained in the modification asked by the plaintiff, but the omission of this modification left the instructions in conflict with others and might have misled the jury. There is no testimony which would justify a finding that the plaintiff was entirely familiar with the surroundings at Guion. There is some testimony that he traveled regularly along that route, and that he had stopped at Guion six or seven times during the time he was traveling in that territory. It was incorrect to state the law to the jury to be that the plaintiff could not recover if, by the use of ordinary care, he could have known that he was not at the station, or that the place

where the caboose was standing, was not a suitable place to debark, and not the place intended by the defendant for discharging passengers. This entirely ignored the plaintiff's theory of the case, that he was induced by the misleading statement and conduct of the conductor to believe that it was the proper and safe place to debark. If, as plaintiff contended, he was induced by the conductor to believe that the caboose had stopped at the proper place for him and his companion to debark, then he is not precluded from recovery merely because he could, by the exercise of ordinary care, have known that he was not at the station or not at the place where it was intended for him to debark. The language of the instruction contradicts the whole theory upon which the case should have been tried, and it was clearly erroneous. There was a sharp conflict in the testimony, and therefore we can not say that the jury were not misled by this instruction.

(5)   The giving of the following instruction, at the defendant's request, is also assigned as error: "13. The jury are instructed that while they are the judges of the weight of the evidence, and the credibility of the witnesses, yet, they must not disregard the testimony of any witness arbitrarily, nor are they to discard or depreciate the testimony of a witness merely because he is in the employ of the railway company." The instruction, as will be seen, singles out a certain class of witnesses, and it was improper to do that in an instruction. We have often held that it was not good practice to single out facts or witnesses, individually or in classes, and to refer to them in instructions—that this court will not reverse a case for refusal to give such an instruction; but, on the other hand, we have held that the giving of such an instruction, though bad practice, does not constitute reversible error. *Hogue* v. *State*, 93 Ark. 316.

Now, this instruction states that the jury should not "discard or depreciate the testimony of a witness merely because he is in the employ of the railway company." It tells the jury, in other words, that the mere fact that a witness is employed by the defendant does not justify the jury in discarding the testimony of such witness or les-

sening its weight. Now, we think that is a correct statement of the law, for the mere fact that the witness is in the employ of the defendant, there being no other circumstances establishing an interest, then it would be entirely arbitrary to disregard his testimony. We have said in cases that where employees of a railway company give a satisfactory account of a transaction under investigation, their testimony can not be disregarded merely because they are employees of the company. *St. Louis, I. M. & S. Ry. Co. v. Landers,* 67 Ark. 514. There is no prejudicial error, therefore, in making that statement of law to the jury. If, however, there are other circumstances, such as the fact that the conduct of the witnesses themselves are under investigation, and they are themselves to that extent interested, the jury would have the right to reject their testimony, and it would be improper to tell the jury anything to the contrary, or to give an instruction which might lead a jury to believe to the contrary. In other words, if this instruction had related to the conductor, who was subject to censure for his misconduct, if the testimony of the plaintiff be true, then the instructions might have had prejudicial effect. But there are several other witnesses in this case who were employees of the railway company, and doubtless the instruction was intended to cover their testimony, and as to them it was not an incorrect statement of the law concerning the weight to be given the testimony of witnesses. If learned counsel for plaintiff feared that the jury might treat the instruction as applicable to the conductor, they should have asked a modification or should have asked another instruction telling the jury that in considering the weight of the testimony of such a witness, they should take into consideration his relation to the occurrence which resulted in plaintiff's injury. We are therefore of the opinion that instruction No. 13, though one which should not have been given because it is bad practice to single out a class of witnesses, was not prejudicial, and does not call for a reversal of the case.

For the error, however, in giving instruction No. 6, without the modification requested by plaintiff, the judgment is reversed and the cause remanded for a new trial.

HART, J., concurs in the judgment of reversal on the ground that instruction No. 13, was erroneous.