KANSAS CITY SOUTHERN RAILWAY COMPANY *v.* WHITLEY.

Opinion delivered June 23, 1919.

1. RAILROAD—KILLING STOCK—EVIDENCE.—The rule that where the testimony of the engineer in charge of a locomotive engine was consistent, reasonable and uncontradicted, and showing that the killing of an animal was unavoidable, a judgment in plaintiff's favor will be reversed, is inapplicable where the jury might have concluded that the engineer's testimony was inconsistent with the physical facts as detailed by him and other witnesses.

2. SAME—INSTRUCTION—LOOKOUT STATUTE.—While it is the better practice for the court to interpret the meaning of the lookout statute in its instructions, rather than to read the same to the jury, as a declaration of law, it was not prejudicial to read the statute to the jury as an instruction where the facts rendered the statute applicable, and there was no issue as to what interpretation should be put upon it.

Appeal from Little River Circuit Court; *J. S. Steel,* Judge; affirmed.

*June R. Morrell* and *James B. McDonough,* for appellant.

1. The court should have directed a verdict for defendant. The engineer's evidence is reasonable, consistent and uncontradicted, and rebuts all presumption of negligence. 66 Ark. 439; 67 *Id.* 514; 89 *Id.* 120; 78 *Id.* 234. The killing was unavoidable. 53 *Id.* 96; 69 *Id.* 659.

2. It was error to read section 8131 of Kirby & Castle's Digest to the jury. 24 Ark. 499; 55 *Id.* 588; 63 *Id.* 477. The rule is not changed in 116 Ark. 514. See also 119 *Id.* 295; 127 *Id.* 323.

3. Even where stock are discovered on the track, he is not necessarily required by law to stop or slacken the speed of the train. 37 Ark. 593. Nor to slow down if cattle are seen on the right-of-way. 99 *Id.* 226.

*Seth C. Reynolds,* for appellee.

1. The killing is admitted. This makes a *prima facie* case of negligence, and the burden shifted to defendant to show that the killing was not done negligently. 88 Ark. 12; 83 *Id.* 217.

2. The evidence shows negligence, as do the physical facts, and there was no error in reading to the jury the law of this State. 74 Ark. 606; 70 *Id.* 385; 34 *Id.* 39; 62 *Id.* 187; 95 *Id.* 226. The cases cited by appellant do not apply here.

3. There was no error in the instructions, nor in reading our statute. 99 *Id.* 226; 119 *Id.* 295-301.

WOOD, J. This is an action by the appellee against the appellant to recover damages for the alleged negligent killing of a Jersey heifer belonging to the appellee. The appellee alleged that the heifer was killed about three-fourths of a mile north of Ashdown by the southbound passenger evening train of the appellant. The appellant denied that it had killed the heifer, and set up that if the appellee had been damaged the loss was

due to his own negligence and carelessness, and not to any negligence on the part of the appellant.

The appellee testified that about the 12th day of August his Jersey heifer was killed about three-fourths of a mile north of Ashdown. He knew that the evening passenger train killed her because he saw she was dragged in front of the train; found her on the right-of-way on the east side of the track right at the crossing; that on one side she had some skinned places and the left hind leg was broken. Witness had demanded of the agent of the appellant at Texarkana the sum of $75 as pay for the heifer, but the agent refused to pay. The heifer was worth $75.

Other witnesses corroborated the testimony of the appellee tending to prove that the heifer was killed by the said passenger train of appellant's as alleged in appellee's complaint, and that the market value of the animal was $75. The testimony tended to prove that the railroad track at the point where the animal was killed was straight for some distance; that one could see 150 yards north of that point.

The testimony of the engineer was substantially as follows: "He was an engineer and pulling the passenger train going south which killed the heifer in controversy. Witness could see the cows on the left-hand side of the track in plain view. There was a road crossing close to where they were, and the cow didn't show any indication of being close to the track, or anything. Witness whistled for the road crossing, and then whistled for the semaphore signals, and applied the brakes, got the semaphore answer and went on down, and just as he got in seventy-five or eighty feet of the cow she raised her head and went for the track, and just before she got across she momentarily stopped and the train hit her. Witness couldn't stop. She jumped on the track in front of witness, and with the train witness had it was impossible to prevent the same from killing her. If it had been witness' own wife and child, he couldn't have prevented the accident. The train had air-brakes in good order.

The cows were one-half mile away when witness first saw the cattle. They were 25 or 30 feet away from the track on right-of-way. They made no attempt whatever to approach the train until witness got within 75 feet. The heifer jumped right up with her head up, and came right upon the track. Witness had already applied the brakes. He applied them about 1,500 feet from where the cattle were. He had reduced his rate of speed coming into the city limits and approaching semaphore and had applied brakes in service application, not a stop application. The service application is to check the speed of the train, in order to have it under control, approaching the semaphore. Witness drew off probably three or four pounds of air in order to check the momentum. It wasn't to stop the appliance at all, but when he saw the cow going straight toward the track he went into emergency immediately. The cow started like she was coming across, and she got with her front feet upon the track and stopped. She was on the east side and was knocked off on that side.

The court gave the following instruction to the jury:

"It shall be the duty of all persons running trains in this State upon any railroad to keep a constant lookout for persons and property upon the track of any and all railroads, and if any person or property shall be killed or injured by the neglect of any employee of any railroad to keep such lookout, the company owning or operating any such railroad shall be liable and responsible to the person injured for all damages resulting from neglect to keep such lookout, notwithstanding the contributory negligence of the person injured, where, if such lookout had been kept the employee or employees in charge of such train of such company could have discovered the peril of the person injured in time to have prevented the injury, by the exercise of reasonable care after the discovery of such peril; and the burden of proof shall devolve upon such railroad to establish the fact that this duty to keep such lookout has been performed."

The appellant objected specifically to the instruction on the ground that the evidence in the case did not warrant the court in giving the same and because the instruction, which is a copy of the act of May 25, 1911, commonly referred to as the "Lookout Statute," is misleading because the facts recited in the statute are not supported by the evidence in the case.

The court also instructed the jury as follows: "If you believe from the evidence in this case that if defendant's servants had been keeping a lookout and could have avoided the killing of plaintiff's cow by stopping its train, it was the duty of defendant's servants to stop its train to avoid the injury."

The appellant asked the court to instruct the jury to return a verdict in its favor, which request was refused. To which ruling the appellant duly excepted.

The court granted appellant's prayers for instructions Nos. 2 and 3 as follows:

"2.   The court instructs the jury that the engineer operating the locomotive pulling the train has the right to operate the train upon the assumption that any animal on the track will get off before being struck by the train.   In this case, if the animal was upon the right-of-way, or if it was near enough to the track to be struck by the engine, nevertheless the engineer had the right to assume that the animal would move out of the way before the train arrived at the point where the animal was.   If the animal started across the track in front of the engine suddenly, and if the animal remained still until the engine was only a short distance away, and then started suddenly to cross the track in front of the engine, and if, after the engineer realized that the animal would cross in front of the engine, he was unable to slow the engine down or stop it, so as to avoid the killing, in that event you will find for the defendant."

"3.   If the animal was in view, and was in a place of safety when first observed by the engineer, the said engineer in that event had a right to assume that the animal would not suddenly rush upon the track and had

the right to operate his train accordingly. If said animal did remain in a place of safety until the engine. was so near that it could not be stopped, and then rushed suddenly in front of the engine and was injured, the jury will find for the defendant.''

The jury returned a verdict in favor of the appellee in the sum of $60, and from the judgment rendered in his favor against the appellant for that sum is this appeal.

In *St. L. S. W. Ry. Co.* v. *O'Hara,* 89 Ark. 120, we held: ''Where the testimony of the engineer in charge of a locomotive engine was consistent, reasonable and uncontradicted, and showed that the killing of the animal was unavoidable, a judgment in plaintiff's favor will be reversed.'' See also other cases cited in appellant's brief.

The appellant contends that the above doctrine is applicable to the facts of this record and calls for a reversal of the judgment.

The engineer testified that he could see one-half mile away as he was coming around the curve; that he checked his train 1,500 feet away because he was approaching the city limits and semaphore; that the cow was three-fourths of a mile from the depot, his train being still further away; that the cow was 25 or 30 feet from the railroad track and showed no inclination to approach the track until his train got within 75 or 80 feet of the cow, ''when she just raised her head and went for the track and just before she got across she just momentarily stopped with her front feet upon the track and the train hit her.''

The testimony of the appellee tended to prove that the heifer was knocked off on the east side of the track about six or seven feet from the railroad. She had skinned places on the left side and her left hind leg was broken. No injury was noticed about the head, except a little blood running out of her nose.

Now, taking into consideration the physical injuries to the cow as described by the witnesses and the position

she was in on the track at the time the train struck her, the direction in which she was moving and the rate of speed at which she must have been moved; the distance from the track when she began to move towards it and the respective distances of the cow and the train from the point where the collision occurred at the time the cow first began to move towards the train, and the relative speed made by each, we conclude that it was for the jury to say whether the testimony of the engineer was reasonable, consistent and uncontradicted.

The jury might have concluded that his testimony was not consistent with the physical facts as detailed by him and other witnesses. For instance, if the cow was on the east side of the track 25 or 30 feet away from the same and had run towards the west, stopping with her front feet on the track and was struck by train going south as the engineer testified, the jury might have concluded that this testimony was wholly in conflict with the physical facts as to the injury of the cow as described by other witnesses.

If the cow was crossing the track from the east to the west and stopped with her front feet on the track while the train was going south, this would have thrown her right side, and the front part of her body, her head, in a position to be first struck by the train. But the testimony of the witness was to the effect that her horns were not broken; that he did not notice any skinned or bruised places about her head, and that the skinned and bruised places on her body and the broken leg were all on the left side.

These facts were at least sufficient for the jury to say whether or not the engineer's testimony was reasonable, consistent and uncontradicted. Therefore, the doctrine announced in *St. L. S. W. Ry. Co.* v. *O'Hara, supra,* and other cases cited and relied upon by the appellant is not applicable to the facts of this record.

The testimony of the appellee tended to prove, and the appellant's engineer testified, that the heifer was killed by the running of the train. This under the

statute raised a *prima facie* presumption of negligence on the part of the appellant and cast upon the appellant the burden of overcoming the presumption. Kirby's Digest, section 6607; *St. L., I. M. & S. Ry. Co.* v. *Fambro,* 88 Ark. 12; *K. C. So. Ry Co.* v. *Davis,* 83 Ark. 221.

The appellant did not overcome this presumption by testimony which can be said as matter of law to be "consistent, reasonable and uncontradicted," and therefore the court did not err in refusing to instruct a verdict in its favor.

The credibility of appellant's engineer was for the jury. Although the engineer testified that he was keeping a constant-lookout and observed the cow, nevertheless under the circumstances it was a question for the jury to determine whether or not he was keeping a lookout required by the statute, and whether or not he failed to do so, and, if he failed to do so, whether or not such failure resulted in the killing of the appellee's heifer of which he complains.

The appellant's seventh ground of motion for a new trial is that the court erred in giving, on the motion of plaintiff, instruction No. 3, which was the reading by the court to the jury section 8131, of Kirby's and Castle's Digest of the statutes.

The bill of exceptions recites the following: "The court on his own motion gives the following instruction to the jury, which is section 8131, Kirby's Digest, which said instruction is in words and figures as follows: (Then follows the instruction which is in the exact language of section 8131 of Kirby's and Castle's Digest). Then follows the exception to the ruling of the court.

It was proper, under the issue of negligence raised by the pleadings and the testimony, to declare the law defining the duty of the employees of railroads running trains in this State to keep a constant lookout as prescribed by the statute. There was no issue before the jury as to what was the proper interpretation to be put upon this statute, nor is it a case where the statute is susceptible of more than one interpretation.

The only question was and is, whether the statute is applicable. The issue raised made the statute applicable.

It is the better practice for the court to interpret for the jury the meaning of the statute in its instructions, rather than to read the same to the jury as a declaration of law. *St. L., I. M. & S. Ry. Co.* v. *Elrod,* 116 Ark. 514. But here, as we have seen, there was no issue as to what interpretation should be put upon the statute and the facts rendered the statute applicable. The mere reading of it could not have resulted in any prejudice to the jury.

The instructions as a whole correctly submitted the only issue, to-wit: "Whether or not the killing of appellee's heifer was the result of the negligence of appellant in running its train."

The judgment is correct, and it is affirmed.