Kansas City Southern Railway Company *v.* Griffin.

## Opinion delivered January 26, 1920.

1. Railroads—presumption of negligence from killing animal. —The *prima facie* presumption of negligence arising from Kirby's Digest, section 6607, from the killing of an animal by a train is not overcome by testimony of the engineer that there was no negligence and that he did everything in his power under the circumstances to avoid the injury, unless such testimony can be said as matter of law to be consistent, reasonable, and uncontradicted.

2. Railroads—killing stock—evidence.—In an action for damages for mules killed on a railroad track, evidence *held* sufficient to sustain a finding of negligence on the part of the railroad company.

Appeal from Miller Circuit Court; *Geo. R. Haynie,* Judge; affirmed.

*James B. McDonough,* for appellant.

A directed verdict should have been given for defendant. No negligence whatever was proved and the evidence of the engineer was not contradicted but corroborated by other witnesses. The presumption of negligence was clearly overcome. 78 Ark. 234; 66 *Id.* 439; 67 *Id.* 514; 89 *Id.* 120; 53 *Id.* 96; 69 *Id.* 659; 122 *Id.* 445.

*Pratt P. Bacon,* for appellee.

The evidence shows that the engineer was not keeping a proper lookout and that no stock alarm was sounded. 118 Ark. 580; 68 *Id.* 32. It was raining very hard and the train was running at a high rate of speed. 111 Ark. 137; 117 *Id.* 462. The judgment is right.

Wood, J. This action was brought by the appellee against the appellant to recover damages which the appellee alleged he sustained by reason of the negligence of the servants and employees of appellant in running one of its trains over the mules of appellee, thereby killing same.

The answer denied the material allegations of the complaint.

The appellee testified that on the morning of the 16th of January, 1919, he found two of his mules dead

on the right-of-way of the appellant, just one-quarter of a mile north of the town of Ravana, between the mile posts 12 and 13 in Miller County, Arkansas. They were killed on the 15th. He saw where the tracks were and where the mules had skidded on both sides of the railroad track. They were going south. He tracked them upon the right-of-way something like 100 feet. They were knocked something like 50 feet before they struck the ground. The mules were worth $500. Where the mules were killed the track was straight three-quarters of a mile each way.

Other witnesses testified on behalf of the appellee to the effect that they saw the tracks of the mules on the railroad of the appellant, going south, at the place where the mules were killed, a distance of 30 or 40 steps; that the railroad track at that place was straight for a distance of one-half or three-quarters of a mile. One witness stated it was straight from three-quarters to a mile; that from the appearance of the tracks the mules were running.

It was shown by the appellee, who lived about a quarter of a mile from the place where the mules were killed, that he did not hear any stock alarm given by the appellant's train on the night that the mules were killed. Another witness, who lived a half mile distant, stated that he "heard the train whistle for the station, on the night that the mules were killed, at the place where they usually blow the whistle. The stock were killed about that place." He "heard the long blow of the whistle but no stock alarm. It was the south-bound passenger which was supposed to have killed the mules, which passed Ravana on that night about the usual time. The train did not stop there. It was the night of January the 15th. The train was due about 8:30 p. m. It was raining a light rain at the time the train came along."

Another witness, who lived a half mile distant, did not hear the train sound the stock alarm as it passed that night.

Other witnesses corroborated the testimony of the appellee as to the value of the mules.

The engineer who was operating the locomotive pulling appellant's train, which killed appellee's mules, testified as follows: "We were going down on No. 3 that night and just while I was whistling for Ravana, some mules jumped up the bank right in front of the train, right on the track. It was raining very hard. We were having an awfully heavy rain at the time, and I could not see them until they got on the track. I had my head out of the window. I was looking for a signal at the station, to see whether I got a stop flag. Ravana is a flag station for No. 3, and unless you get a signal, you don't stop. The mules first got in sight as they were getting on the track. They came from the right side, the engineer's side. They were probably 400 or 500 feet, not to exceed 500 feet, ahead of the engine. I was going 40 miles an hour, had a passenger train of five cars. I could have stopped it in about 1,200 or 1,500 feet at that rate of speed. It was impossible to stop the train from the time that the animals came into view so as to avoid killing them. I could not do it. I was running within my speed limit. When I first saw them, I put the air on, tried to slacken the speed all I could. I made a service application. I did not make the emergency application, because with the emergency application you are liable to injure the passengers. I used the whistle as the alarm to scare the animals off. The head light was in proper condition. I do not think the mules ran over 150 feet before I caught up with them. When I struck them I was probably running 30 miles an hour. In a slow, general rain you will probably see on both sides of the right-of-way from 900 to 1,000 feet. If it had just been a general rain there was nothing to keep me from seeing these animals. The right-of-way was clear and the track was straight, but this was a hard rain."

The fireman, who was on the engine at the time the mules were killed, testified that it was raining very hard that night. He couldn't see 700, 800, to a 1,000 feet ahead.

He didn't know whether he could see 500 or 600 feet. On cross-examination he stated he didn't know whether they hit any mules on the 15th of January or not. All he knew about it was what somebody told him.

In rebuttal witnesses testified that at about the time the train in controversy went south it was raining a little, but not a great deal. One witness said: "It was just a sort of a light sprinkle." Another stated that "it was just an ordinary rain or shower."

From a judgment in favor of the appellee in the sum of $500 is this appeal.

The appellant contends that there was no evidence to sustain the verdict. This is the only question for our consideration.

The testimony of the engineer was contradicted in at least two important particulars. First, he stated that he used the whistle to scare the animals off; second, he stated it was raining very hard, "an awfully heavy rain" at the time. These statements are contradicted by the testimony of the witnesses for the appellee. The testimony of the engineer shows that the headlight of the engine was in good condition and that in a slow general rain, he could probably have seen on both sides of the right-of-way a distance of "from 900 to 1,000 feet." He further stated "if it had been just a general rain there was nothing to keep him from seeing these animals." The testimony of the witnesses for the appellee tended to show it was a general rain. There was testimony also tending to show that no stock alarm was sounded.

The case, therefore, under the evidence does not fall within the doctrine announced in *Railway* v. *Shoecraft*, 53 Ark. 96; *K. C., F. S. & M. Ry. Co.* v. *King*, 66 Ark. 439; *St. L., I. M. & S. Ry. Co.* v. *Landers*, 67 Ark. 514; *St. L., I. M. & S. Ry. Co.* v. *Cline*, 69 Ark. 659; *Lane* v. *K. C. S. Ry. Co.*, 78 Ark. 234; *St. L. S. W. Ry. Co.* v. *O'Hare*, 89 Ark. 120.

But the case under the facts falls within the rule announced by this court in the recent case of *K. C. So. Ry. Co.* v. *Whitley*, 139 Ark. 255, where we held that a

*prima facie* presumption of negligence arising under the statute (6607 Kirby's Digest) from the killing of an animal by a train is not overcome by the testimony of the engineer unless his testimony, to the effect that there was no negligence and that he had done everything in his power under the circumstances to avoid the injury, can be said as a matter of law to be consistent, reasonable, and uncontradicted.

Another recent case is that of *Lusk v. Cooper,* 130 Ark. 241. Other cases are *St. L., I. M. & S. Ry. Co.* v. *Erwin,* 118 Ark. 580; *St. L. & S. F. Rd. Co.* v. *Minor,* 85 Ark. 121; *K. C. So. Ry. Co.* v. *Cash,* 80 Ark. 284; *St. L., I. M. & S. Ry. Co.* v. *Kimberlain,* 76 Ark. 100; *St. L. S. W. Ry. Co.* v. *Costello,* 68 Ark. 32.

There was evidence to sustain the verdict, and the judgment is therefore correct, and is affirmed.