ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COM-
PANY v. SPILLERS.

Opinion delivered April 12, 1915.

1. APPEAL AND ERROR—UNCONTRADICTED EVIDENCE—DUTY OF JURY.—In
an action for damages due to personal injuries, caused by plain-
tiff's being struck by a moving train, where the testimony of the
locomotive engineer and fireman, upon whom liability was predi-
cated, is reasonable and consistent, and uncontradicted, the jury
has no right, arbitrarily, to disregard the same.

2. RAILROADS—INJURY TO TRESPASSER—LOOKOUT.—Where plaintiff was
a trespasser on defendant railway's right-of-way, the defendant will
not be liable for an injury to plaintiff, caused by running into
him, where the engineer and fireman maintained a proper look-
out, and did not see the plaintiff in time to avoid hitting him.

Appeal from Grant Circuit Court; *W. H. Evans,*
Judge; reversed.

STATEMENT BY THE COURT.

The appellee, a seventeen-year-old boy, came from
Louisiana to Dexter, Arkansas. He sat down by the side
of a cattle guard at night to rest a little while and went
to sleep. He sat down on the second cross-tie. He was
on the right side going towards Pine Bluff. He indi-
cated how he was sitting. He did not know when he
went to sleep. The next thing he knew was when the
train hit him. He did not hear any whistle or bell or
anything. The train did not stop. There was a road
crossing the track at that point. He described his in-
juries, and stated that the claim agent paid him $50 to
pay his expenses in the hospital, and that he used the
money to pay the hospital expenses and doctor bills.

Other testimony on behalf of the plaintiff tended to
show that the injury occurred at a public crossing, and
that the trainmen did not ring the bell or blow the whistle
for that crossing. The train did not stop or check or
give any indication that any person had been discovered
on the track. The track was straight for something like
two miles above and three miles below where the appel-
lee was injured.

The engineer testified as follows: "I was keeping
a lookout and did not observe anyone on or close to the

track that night. I know where the cattle guards are just beyond the station. I did not observe anyone about those cattle guards. My position on the engine is sitting looking ahead, watching straight ahead. I did not hear anyone halloo that night. There was nothing whatever to call my attention to anybody that was injured there. I knew nothing about it until the next night at Monroe.

The fireman testified as follows: "I never saw anybody near Dexter that night. When I am not putting in a fire I am looking ahead. There was nothing whatever to attract my attenton about Dexter. My first knowledge about it was when they wrote me a letter."

To test the ability of a person to see one lying on the side of the cattle guard, as appellee had described his position, the appellant made an experiment by two witnesses. One Huckleberry, a claim agent, was told to place himself in the same position that appellee said he was lying. One of the witnesses who made the test, testified, in part, as follows: "I am sixty-three years of age. I do not know that I could see the gravel. We had a good headlight and I could see everything else. I was not looking for the gravel, but the man. The light was perfect and I could see the cross-ties. We saw a man there; don't know how long he had been there. I don't know whether that claim agent was there any length of time; he might have just slid around to get me to see him. I didn't see him until he moved. I know he was there when that train was within fifteen or twenty feet of him, and·I saw him pull up a little. I could see the cattleguard and that thing up by the side of it. We had no interest in it whatever; just went down there because a man wanted us to see if we could possibly see that man."

Another witness, after testifying that he went down at the request of the agent of appellant to make the test, proceeds as follows: "I was riding on the left hand side of the engine. I will soon be seventy-three years old. The light was good. I was keeping a sharp lookout. I looked all the way, that is, after we got to a certain point. He said, 'Keep a lookout all the time'; but when we got

there at a certain point he said, 'Keep a sharp lookout, there will be a man on the track and I want you to see if you can see him,' and I kept a sharp lookout and never did see anybody. Where the track was straight I could see for a long distance; something like a quarter of a mile. I could not say how far. I could see the side fenders, or whatever they call those things, on the side of the cattle guard. If there had been a man on one of them on my side I could have seen him, because the light is bright and I was keeping a lookout all the time; he told me to keep a sharp lookout. A man might have been lying on the cattle guard and I would not have noticed that any more than I would the cattle guard. I could have seen the man if he had been there, but there was not any man there." He was asked the following question: "If a man had been on that cattle guard you could have seen him before you got in fifteen feet of him?" and answered, "Well, I could not say as to that; if there had been a man on there I could have seen him before I passed him, I think. There were places I could see away out on each side of the track, twenty-five or thirty feet, where the track is straight. The track was straight where the men made the stop."

Witness Huckleberry, who, for the purpose of the experiment, was placed in the position that appellee was in at the time of his injury, testified as follows: "I placed myself in the cattle guard before the train was within half a mile of the station. I remained in that position until I moved my foot and leg to keep from being struck by the train. I remained absolutely quiet until that time. I had my foot on the guard rail." The front of the engine was about four to six feet away when he moved to get out of the way. The station was some 300 yards from the cattle guard. "I placed myself as nearly as possible in the position and was there until the test was completed. I do not know how long it was. It was longer than half a minute."

The above are the facts upon which the appellee sued the appellant for personal injuries, alleging that appellant negligently and carelessly ran its train upon him;

that appellant's employees failed to keep a lookout, through which negligence appellee was injured, etc.

The appellant denied the material allegations of the complaint and set up contributory negligence, and pleaded a release on the part of the appellee. There was a verdict and judgment in favor of the appellee in the sum of $1,000. Appellant moved for a new trial, one of the grounds being, "That the evidence is insufficient to sustain the verdict, and because the court erred in refusing appellant's prayer for instructions 1 and 3, which, in effect, were for a directed verdict.

*E. B. Kinsworthy, W. R. Donham* and *T. D. Crawford,* for appellant.

The evidence does not sustain the verdict. The testimony of the test witnesses, who had the advantage of the engineer and fireman in knowing that there was a man to be looked for who had placed himself at the cattle guard in the position plaintiff said he was in, shows that they were unable to discover the man until they were within fifteen feet of him, when he moved.

Nothing in their testimony tends to contradict the engineer and fireman. 171 S. W. 912; 115 Ark. 584.

*Appellee, pro se.*

Notwithstanding the engineer and fireman testified that they were keeping a lookout and did not see a man on or near the track, it is also in proof that the track was straight and open for a long distance approaching the place of injury; that there was a bright headlight on the engine and that a person on the engine could have seen any one on or near the track. The jury evidently believed, as they had the right to believe from the facts and circumstances, that the engineer and fireman were not keeping the lookout. The evidence is sufficient. 110 Ark. 444.

Wood, J., (after stating the facts). (1) The testimony of the engineer and fireman, employees in charge of appellant's train, upon whose alleged negligence the liability of appellant to appellee was predicated, is perfectly reasonable and consistent. Their testimony was uncontradicted, and the jury had no right to arbitrarily

disregard the same. *St. Louis, I. M. & S. Ry. Co.* **v.** *Humbert,* 101 Ark. 532, and cases there cited.

(2)    The undisputed testimony shows that appellee was a trespasser, and that the engineer and fireman, at the time of his injury, were keeping the lookout required by the statute, and that they did not discover the perilous situation of appellee, and could not have discovered the same in time to have avoided the injury for which he sues. The night was dark, and the position that appellee assumed in lying down upon the cross-ties at the cattle guard was such that the engineer and fireman did not and could not have discovered him in time to have prevented injuring him.

Witnesses who made the test as to the ability of one to see a person lying upon or by the track from the engine corroborated the testimony of the engineer and fireman.    The case is wholly unlike the cases of *St. Louis, I. M. & S. Ry. Co.* v. *McMichael,* 115 Ark. 101, and *St. Louis, I. M. & S. Ry. Co.* v. *Belcher,* 117 Ark. 638, *infra,* recently decided by this court. There the injury occurred in daylight, and there was a conflict in the evidence as to whether the employees had kept the lookout required by the statute.

While one of the witnesses says that he could see the gravel a distance of a quarter of a mile and could see the cross-ties, the cattle guard and the "thing up by the side of it," he testified that he could not and did not see the man until he was within fifteen or twenty feet of him.    And the other witness testified that he could see a man on the cattle guard as easily as he could see the cattle guard; that he could see the side fenders on the cattle guard, and that if there had been a man on his side he could have seen him because the light was bright; but he does not say at what distance he could have seen him.    There was no man on his side, and he therefore did not see the man who was placed in the position that appellee was in when his injury occurred.

There is no testimony to sustain the verdict.    The judgment will therefore be reversed, and as the case has been fully developed the cause will be dismissed.