## DALY v. ARKADELPHIA MILLING CO.

### Opinion delivered November 27, 1916.

1. MECHANICS' LIENS—LIABILITY OF OWNER FOR CONTRACTS OF AGENT.—Where the contract is made with an agent to have work done and materials furnished, in order to bind the principal, under the statute, (Kirby's Digest, § 4970), it is essential that the agent have authority to make such a contract; the burden of proof is upon the parties attempting to assert the lien to show that the person with whom they contracted was the agent of the owner, and that as such agent, that he acted within the scope of his authority when he authorized the work to be done.

2. PRINCIPAL AND AGENT—PROOF OF RELATIONSHIP.—The authority of an agent can not be established by the mere fact that the person claiming such authority has exercised it.  Agency must be shown by positive proof, or by circumstances that will justify the inference that the principal has assented to the acts of his agent.

3. PRINCIPAL AND AGENT—PROOF OF RELATIONSHIP.—While the relation of principal and agent can not be proved by the declarations of the agent, it may be established by the agent's testimony.

4. PRINCIPAL AND AGENT—KNOWLEDGE OF ACTS OF ALLEGED AGENT—REPAIRS ON HOUSE.—One D. agreed to sell certain property to R., and delivered a deed thereto in escrow to a bank; R. went into possession. *Held*, knowledge and consent by D. that R. was in possession of the property and making improvements, alone, did not establish that D.

authorized the improvements to be made for his benefit, nor will it justify a finding that D. placed R. in possession, authorizing him to repair and rebuild, so as to render D. and the property (which was never conveyed to R.) liable to laborers and ⸳ materialmen for services rendered.

Appeal from Clark Chancery Court; *Jas. D. Shaver,* Chancellor; reversed.

## STATEMENT BY THE COURT.

On September 21, 1914, the appellant, T. J. Daly, and his sister executed a deed conveying a certain lot upon which a dwelling house was situated in the town of Arkadelphia, Arkansas. The consideration named in the deed was $820.00, to be paid on or before June 15, 1915. The deed was placed in escrow in a local bank at Arkadelphia, and the grantee, R. A. Roberson, was given possession with the understanding that he was to pay an amount equal to eight per cent. interest on the $820.00. When Roberson's note for $820.00 became due in June, 1915, he did not pay the purchase price or any part thereof, and asked Daly to extend the time for such payment until September, 1915, which request Daly granted.

Between June and September, 1915, Roberson bought lumber from the Arkadelphia Milling Company, and hardware from the Graves Hardware Company, and employed C. D. Gregory, a carpenter, and had ⸳ certain repair work done on the house. Roberson did not pay these parties for the material and labor and they instituted this suit against Roberson and Daly for the amounts claimed by them and asked that the same be declared a lien upon the house.

Daly answered, setting up that the deed from himself and his sister to Roberson had never been delivered to Roberson, but was placed in the Citizens National Bank in escrow, to be held until June 1, 1915, when the deed was to be delivered to Roberson upon his paying to the bank the sum of $820.00; that Roberson was given immediate possession of the property, and upon his request permission was granted him to make

certain repairs thereon upon his own responsibility, but that no authority was given him by the owners to make the repairs on their account, and that he did not act for them as agent in buying the material and having the work done; that the owners extended the time for Roberson to make the payment from June 1 to September, and that Roberson having failed to pay for the property in September, the deed was withdrawn from escrow.

Roberson answered admitting the purchase of the materials and the performance of the labor under contracts made with him, and averring that he went into possession for the purpose of improving the property so that he could get a loan on the property with which to pay Daly, and alleged that Daly knew that he was making the improvements in order to apply for a loan with which to pay Daly; that the improvements were placed on the property with the consent and knowledge of Daly. He further alleged that when he entered into the contract with Daly for the purchase of the property it was understood that Daly would furnish him an abstract showing perfect title; that Daly failed to comply with his contract in this respect, and for that reason he was not able to obtain the loan.

Roberson testified in substance as follows: That he entered into the contract for the purchase of the property with one J. D. Townsend, whom he understood to be the agent of Daly. Townsend was also representing Roberson in endeavoring to secure a loan on the property, and at Townsend's request, partly, Roberson had the work done. The reason the trade between himself and Daly was not closed was on account of some dispute with reference to a part of the lot, being a strip of ground on the north side of the lot 10 feet wide and 110 feet long, that was claimed by a Mr. Cleveland. Roberson did not know about this claim until he had let the contract for the repair work and it was nearly completed. When he noticed the abstract showed this defect he wrote to Daly about it and finally Daly came to Arkadelphia and they tried to settle it, but could not. The

deed was not to be delivered to Roberson until the note was taken up. Roberson regarded Townsend as Dr. Daly's agent in effecting the sale of the property and felt that in speaking to Townsend he was speaking to Daly, because Townsend represented to witness that he was Daly's agent. The improvements were put upon the property with the approval and consent of Daly and Townsend. Witness would not have put the improvements there without their consent. Witness supposed that Daly and his sister had a perfect title or they would not be selling the lot. He cautioned Daly about the abstract in every letter that he wrote, and also informed him that witness would have to borrow the money to pay the note, and that it would require an absolute title. He exhibited a letter written to Dr. Daly, at Palmer, Texas, in which he informed Daly that it would be satisfactory for him to execute deed and deposit the same with the Citizens National Bank of Arkadelphia, together with a *bona fide* abstract, conveying perfect title, and note of witness payable June 15, 1915. In this letter he informed Daly that he would be compelled to borrow at least part of the money with which to handle the note when it matured, saying, "Therefore, we cannot be too particular in the matter of making sure of a perfect title." He concludes the letter by saying: "If we are to deal at all it will have to be done at once as I contemplate considerable improvement of this property so that it will prove an attractive rental proposition." Daly replied to this, "I am perfectly willing to have my wife, sister and her husband to sign the deed with me so as to make you a clear title to the house and lot, and if you wish you can begin your improvements at once, as it will take some time to make you a deed as you request."

In answer to Daly's letter, Roberson, among other things, said: "I am perfectly willing that you shall have the time necessary for the deed to be forwarded to California for Mrs. Slade's signature after you and your wife have signed the same. In the meantime, acting

upon the suggestion as per your letter, I shall take possession of the place and begin my improvements."

Townsend testified that he was Dr. Daly's agent "in looking after this property at Arkadelphia and closing the deal." As such agent he authorized Roberson to go into possession of the property and make the improvements. Daly knew that Roberson was in possession and making the improvements, and approved of it. As a part of the contract, Daly was to give Roberson a perfect title to the lot and an abstract showing that fact. Witness, as agent of Daly, knew, and Daly also knew, that Roberson expected to get the money, or part of the money, on the property by borrowing it from a loan company. Roberson was not able to get the money because of a defect in the title. Witness took that matter up with Dr. Daly. Daly did not have the alleged defect in the title removed, and that stopped the trade and prevented Roberson from carrying out his part of the contract.

Witness exhibited with his deposition a letter that he received from Daly, which witness construed as giving witness more authority than simply closing the deal. The letter was received by witness while the deal was pending for the sale of the property to Roberson. It reads as follows: "I will be glad if you would look into the title of this lot which he is to put up as security, as you are my agent, I don't think it necessary for me to have my attorney there to look after the papers, as I am sure you will look to my interest in the premises. It will be all right for Mr. Roberson to improve the place, as we are dealing in good faith, and I am sure he is."

Other letters which passed between Daly and Townsend after the deed was executed and deposited in escrow were read in evidence. In one of these letters Townsend informs Daly that he could loan Roberson $2,500.00 on his home place and the one he was getting from Daly, which would enable Roberson to pay his note in the bank to Daly. In one of Townsend's letters to Daly while the negotiations were pending he states:

"Mr. Roberson let the contract yesterday to one of our local carpenters to have about $500.00 or $600.00 worth of improvements done on the little house he got from you. He came to see me before closing the contract and wanted to know if there were reasonable possibilities of the loaning company placing on it a loan of $1,000.00 when completed, and I told him that I felt sure there were. The contract calls for the work to be completed within fifteen days, and I suppose note will be paid soon after the completion."

In one of the letters written by Townsend to Daly after the deed and abstract had been deposited in the bank Townsend informed Daly that Roberson was complaining "about Mr. Cleveland claiming the right to use 10 feet across the property;" and in this letter Townsend states that, "the abstract shows that this alley is on the property just north" of Daly's lot. And Townsend further states that he (Townsend) does not believe that Cleveland can hold the alley, but that Roberson will not close the deal until the matter is settled, and Townsend asks what he must do.

In answer to this letter Daly wrote Townsend as follows: "Please see Mr. Roberson and if he will not close the deal as per contract instruct the bank to send me my deed. If the bank refuses to send my deeds wire me at once."

In answer to this letter Townsend wrote Daly that he had seen Roberson, and that Roberson advised that there had been no settlement for materials and labor on the house, and that the laborers and materialmen would immediately file liens against the property unless there was a satisfactory settlement, and urging Daly, before having the deed in escrow returned to him, to take time and adjust his differences with Roberson as to the abstract of title in order to avoid legal proceedings.

Daly testified that Mrs. Laura Butler was his agent at Arkadelphia, and that she turned over the place to J. D. Townsend to sell upon the terms already stated; that Townsend had no authority to act as his

agent except in the sale of the property. He gave no one any authority to improve the property whatever as his agent. He received a letter from Townsend stating that Roberson had found a flaw in the title and would not take the land until it was straightened up. Witness wrote Townsend to tell Roberson that he bought the land with the record before him, and that if he would not take up his note to instruct the bank to send witness' deed. Witness stated that he did not dream that any man would place his property in jeopardy of liens without his knowledge or consent.

The court found that T. J. Daly placed R. A. Roberson in possession of the property and authorized the said R. A. Roberson to repair or rebuild the house on the lot in controversy, and also found the value of the materials and labor, and rendered a decree in favor of the appellees for the respective amounts claimed by them, declared same a lien on the lot in controversy and ordered same sold to satisfy the decree. Daly prosecutes this appeal.

*Callaway & Huie*, for appellant.

1.   Roberson was not the *owner* of the property nor the *proprietor*, nor the owner's agent, or trustee, and there was no lien. 5 Ark. 217, 220-1-2-3; 56 *Id.* 217-19, 220-1; 57 *Id.* 481; 167 (Tex.) S. W. 275; 80 Tex. 62; 106 N. E. 466; 203 Ill. 198; 114 Ark. 7.

*McMillan & McMillan*, for appellees.

1.   The doctrine of agency rules this case. Roberson was the agent of Daly and in possession under contract of purchase. Kirby's Digest, §§ 4970, 4914; 51 Ark. 302; 30 *Id.* 568; 122 Ark. 464; 90 Ark. 469; 9 Am. St. 435; 124 *Id.* 880; 41 *Id.* 767; 47 Ark. 481.

2.   Daly is estopped from setting up his title as against the lien. 56 Ark. 217; 61 Am. Dec. 696, and note.

3.   Daly failed to furnish perfect or marketable title as he agreed. 57 Ark. 481; 66 *Id.* 33, 548.

WOOD, J., (after stating the facts). I. ˏOur statute provides that, any person who shall perform any work upon or furnish any material for any building upon land, or for repairing the same, "under or by virtue of any contract with the owner or proprietor thereof, or his agent, trustee, contractor or sub-contractor, upon complying with the provisions of this act shall have for his work" a lien upon such building and upon. the land belonging to such owner or proprietor. Kirby's Digest, § 4970.

There is no pretense that the material furnished and the work done for which claim is made in this suit were under or by virtue of any contract with the owner or proprietor in person. The contention is that Townsend had the work done as the agent of the owner. There is no testimony in the record to warrant a finding that Townsend was the agent of Daly in the matter of having the repairs done on the building.

(1) Where the contract is made with an agent to have work done and material furnished in order to bind the principal, under the ·statute, it is essential that the agent have authority to make such a contract. The burden of proof was upon the appellees to show that Townsend was the agent of the owners, Daly and his sister, and that as such agent he acted within the scope of his authority when he authorized Roberson to make the improvement on the lot in controversy.

While Townsend· testified that he was the agent of Daly in looking after the property and in closing the deal, and that as such agent he authorized Roberson to go into possession and make the improvements, this testimony falls far short of proving that Daly constituted Townsend his agent for the purpose of having improvements made. This testimony of Townsend does not show that he was authorized by Daly to make the improvements.

Giving Townsend's testimony its strongest probative value in favor of the finding of the chancellor, it only tends to show that Daly consented that Roberson should make the improvements and approved of his

act in doing so.   Undoubtedly, the testimony of Townsend shows that he was the agent of Daly to look after the property at Arkadelphia and to make sale of the property for Daly; and it also shows that Townsend assumed that he had authority as such agent to authorize Roberson to make the improvements for Daly. Now, the fact that Townsend was the agent of Daly to "look after the property and close the deal" did not authorize him to make the improvements to the extent shown in this record.   It can not be said that improvements to the extent and cost of these were within the real or apparent scope of the authority of the agent, Townsend.   Nor would the authority to make such improvement be implied from the express authority to look after and sell the property.

(2-3)   No principle of law is better settled than that the authority of an agent can not be established by the mere fact that the person claiming such authority has exercised it.   It must also be shown by positive proof, or by circumstances that would justify the inference that the principal had assented to the acts of his agent. *St. L., I. M. & S. Ry. Co.* v. *Bennett*, 53 Ark. 208, 210; *Wales-Riggs Plantations* v. *Dye*, 105 Ark. 446.   While the relation of principal and agent can not be proved by the declarations of the agent, it may be established by the agent's testimony.   *Ayer-Lord Tie Co.* v. *Young*, 90 Ark. 104; *Dierks Lumber & Coal Co.* v. *Coffman*, 96 Ark. 505.

Therefore, if Townsend had testified that by virtue of his agency to look after the property and to make sale of the same to Roberson, he was authorized by his principal, Daly, to have the improvements made, or to authorize Roberson to make the improvements for Daly, the case would have been entirely different.   But a careful analysis of the testimony of both Townsend and Roberson will not show that either of these parties had the authority to make the improvements or to authorize the same to be made for Daly.

The testimony of Roberson shows that Daly had written him that he might make the improvements at

any time he wanted to, and that he went ahead with the work partly at the request of Townsend, Daly's agent. But the utmost extent of this testimony is to show that Daly consented that Roberson might make the improvements, and that Daly's agent, by his acts, assumed that he had authority to authorize Roberson to make the improvements. Therefore, Roberson's testimony also falls short of showing the essential fact, that Daly authorized any one to make the improvements for him or for his benefit.

(4) Knowledge on the part of Daly that Roberson was in possession of the property and making the improvements and consent on his part that the improvements should be made, and his approval of such improvements, did not establish the fact that Daly authorized improvements to be made for his benefit, and therefore justify the finding of the chancellor that T. J. Daly placed R. A. Roberson in possession of the property and authorized the said Roberson to repair or rebuild the house on said lot.

It seems to us that this is the correct conclusion, even from a consideration alone of the testimony of the witnesses for appellees, and the letters of Daly in the record, upon which they rely as tending to establish the authority upon the part of Roberson and Townsend to have the improvements made. But when all this testimony is considered in connection with the testimony of Daly to the effect that he gave no one authority to improve the property whatever as his agent, it is clear to us that the above finding of the court is against the preponderance of the evidence.

Liens of mechanics and materialmen "are creatures of the statute and must be perfected and enforced according to its provisions." In *Hoffman* v. *McFadden*, 56 Ark. 202, 205, we said: "Under the statute of this State creating lien for work done or materials furnished in making improvements on real property, the lien exists only where the labor is performed, or materials are supplied, under a contract, expressed or implied, with the owner of the land. * * * " The terms of the

act import no intention to create a lien in the absence of such contract, and there is no decision of this court giving the statute by construction a wider meaning than its language implies." See, also, *Doke, Admr.,* v. *Benton County Lumber Co.,* 114 Ark. 1, 7.

The cases upon which appellees rely are differentiated from the instant case by the facts of those cases. Moreover, any decision contrary to that which we have reached, if based upon statutes similar to our own, would be unsound, and we could not follow them.

II.    There is no testimony in this record to warrant a finding that the appellees furnished the material and did the work, for which they sue, upon any knowledge upon their part that Daly owned the property and had authorized the improvements to be made. Daly lived at Palmer, Texas, and was several hundred miles away at the time the appellees furnished the material and did the work under contracts entered into by them with Roberson. So far as the proof shows to the contrary, they did not know that Daly and his sister were the owners of the lot.

As we have already shown, Roberson was not the agent of Daly to make improvements and had no authority whatever to enter into contracts for the same that would bind Daly. The case therefore is not like that of the owner who stands by and expressly consents to or silently acquiesces in contracts for improvements entered into by mechanics or materialmen with one who claims to be his agent or one who represents himself to be the owner without repudiating the agency or revealing his own identity as the owner and disclosing the condition of his title. Of course, in such cases the owner would be estopped from denying the agency or setting up his legal title to the injury of those who had been thus misled by his conduct in the premises. But such is not this case, and the doctrine of estoppel cannot be invoked against the appellant.

III.    We cannot see that the issue of title as between appellant and Roberson, and as to whether appellant complied with his contract to furnish a war-

ranty deed and an abstract of title, is germane to this controversy. Such issue is not involved in this appeal.

The judgment is therefore reversed and the complaints will be dismissed for want of equity.