KENTUCKY HOME LIFE INSURANCE COMPANY v. MOSLEY.

4-4099

Opinion delivered January 20, 1936.

*L. H. Hilton, D. W. McMillan* and *Rose, Hemingway, Cantrell & Loughborough*, for appellant.

*J. H. Lookadoo* and *Lyle Brown*, for appellee.

BAKER, J.   Junie Gober Mosley sued the Kentucky Home Life Insurance Company upon a policy of insurance issued by the Inter-Southern Life Insurance Company, assumed by appellant. Against this policy of insurance there was a lien or debt of $79.48 and some interest. This was pleaded by the plaintiff in filing her suit. The contract under which Kentucky Home Life Insurance Company assumed these obligations of reinsurance had been duly approved by proper officers in Kentucky, where the appellant company was domiciled, and in Arkansas, wherein the policy sued upon was delivered to Alonzo T. Mosley, the insured.

The reinsurance agreement provided that a lien equal to sixty per cent. of the net equities should be established against policies assumed by the Kentucky Home Life Insurance Company, and it was pleaded, and not disputed, that the net equity in policy No. 151,763 amounted to $37.68; that a lien in the amount of $22.61 was established and placed against the said policy. This added to the indebtedness of $79.48, with accrued interest, was in excess of the cash reserve upon the particular policy at a time long prior to the time of the death of Alonzo T. Mosley. Under the terms and conditions of the policy, when such condition prevailed, after lapse for failure to pay premiums, the policy became of no effect, and the beneficiary was without right to recover thereon.

In the briefs, as we understand them, all parties agree substantially to the foregoing announcement. Plaintiff, however, appellee here, offered proof to the effect that there was an error in the complaint admitting the indebtedness as pleaded therein of $79.48, and offered further proof to the effect that a premium note of $44.95, with interest upon a former outstanding loan, amounting to $1.88, which fell due on August 26, 1931, and which indebtedness was renewed on that date, or shortly thereafter by the execution of another note, in-

cluding the above-mentioned indebtedness, in the sum of $48.23, had been paid. Witnesses who testified to the fact of payment testified first upon a motion to quash the summons and return of service thereon; that the payment was made in the fall of 1932. The appellant had filed this motion to quash, alleging that it had done no business in Arkansas, had no agent for service, and that the service of process on that account was improper. The appellee, however, to show that the company had been doing business, offered this proof tending to show that the appellant company was making collections upon these old notes or obligations, which had been, prior to that time, given to the Inter-Southern Life Insurance Company, and which had been taken over by the appellant.

Upon trial of the case two witnesses testified that early in January of 1933, a Mr. Woods came to Gurdon, where the Mosleys lived, and had with him this premium note above-mentioned and collected the same from Mr. Mosley. The witnesses were not positive, but thought Mr. Woods' initials were S. C. They testified most positively that he represented himself to be the agent or representative of the Kentucky Home Life Insurance Company.

If this alleged fact of the payment of this note be conceded to be established by the proof and as found by the verdict of the jury, then this case ought to be affirmed; otherwise it must be reversed. The question of whether the note was presented and paid is one that was sharply disputed, and, if there is any substantial evidence to support the finding of the jury, the verdict would be binding and conclusive upon us, although this testimony is far from satisfactory to establish the facts contended for, even if the testimony offered were competent for the purpose for which it was offered.

Several witnesses testified by affidavit, upon supplemental motion for new trial, on account of newly-discovered evidence, that the note had constantly been in the files of the appellant company, at its home office in Kentucky, had not been taken therefrom by Woods or any one else; that it had not been sent to Arkansas for collec-

tion at the time witnesses alleged they saw it paid, but this proof comes somewhat late, and it appears to us it must have been available at the time of the trial of the cause, as S. C. Woods was there and testified in the case, and for that reason we give little consideration to this supplemental motion for a new trial, though the evidence set up is perhaps a correct statement of the facts.

Ray Mosley, son of the insured, and Dick Jackson, attorney, who had at one time represented the insured, testified upon trial of the case, that they were present in January, when the man named Woods collected this note and say that he gave a receipt for the money paid, and that the receipt has now been lost; that he did not deliver note upon payment, but said it would have to be taken back to Little Rock on account of suit pending there. Payment was made, however, by Mr. Mosley to Woods in their presence. Ray Mosley got about $20 of the money, which he loaned his father for the purpose of this payment, from the Gurdon Lumber Company, and says that his father got some money also from the Gurdon Lumber Company for the purpose of making said payment.

These facts were sharply disputed by cashiers or bookkeepers of the Gurdon Lumber Company, who say that no such funds were advanced, either to the elder Mosley or to his son, but the jury found against this contention. In addition, the verdict of the jury was approved by the trial judge, who saw all the witnesses and heard them testify.

However, there was one fatal defect in these matters as presented in this case. The only evidence in this entire record about this payment is the testimony of Dick Jackson and Ray Mosley, and the only evidence that payment was made to any agent or officer of the insurance company is their testimony to the effect that the said collector, Woods, represented himself to be the agent of the Kentucky Home Life Insurance Company. There is no proof of agency, aside from the alleged declarations of collector Woods.

It is true that Jackson and Mosley had available a letter from S. C. Woods, written from the home office of the company to Mosley, sometime prior to his death, in regard to his insurance. Neither one of these parties was actually sure that the initials of the alleged agent or collector were S. C., but it may be assumed, for the purpose of this opinion, at least, that S. C. Woods was the one they meant to designate as the agent collecting the money. S. C. Woods, however, was called as a witness, that is to say the S. C. Woods, who wrote the letter in regard to the insurance policy. He testified that he had worked for a time in the home office of the company at Kentucky and had later been sent to Florida for the company, and that he had not collected any money upon this note. He stated in fact that he had never been in Arkansas and was not in Arkansas at the time of the alleged collection of the note.

Dick Jackson and Ray Mosley, present as witnesses, did not dispute this statement of S. C. Woods. His statement is uncontradicted and undisputed. .

Then it must appear that whatever payment was made, if one were in fact made, was made to some other Woods. If it were made to S. C. Woods, Jackson and Mosely would have been able to identify him as the man who was present, received the money and gave the receipt and kept the note. There is no proof that any of this money, alleged to have been used to pay this note, was ever received at any office or by any officer of the appellant company.

We cannot conceive that Ray Mosley and Dick Jackson mean to infer that the S. C. Woods, present and testifying, was the collector. They did not say so directly or inferentially.

According to these witnesses, Mr. Mosley and his son went to Mr. Jackson for advice before making payment upon this note. It is not easy to understand how Mr. Jackson, who is a practicing attorney, suffered himself to fall into an error or belief that this note was an outstanding obligation. According to the note and its terms and conditions, and according to the policy, the note had already been settled by the application of whatever re-

mained of the reserve upon this policy. It was not such an obligation that it could have been reduced to a judgment against Mosley. The most favorable theory, however, of which this case is susceptible is the suggestion that, according to their testimony, the insurance company was willing to revive the lapsed policy and put it in force and effect upon the payment of the amount of money represented by the note. If that be the theory upon which Jackson advised his client, then the authority of the agent collecting the money must be established as well as his agency.

The law applicable to this case is well settled and is not difficult of application here. We think the statement of S. C. Woods, who testified in this case, is undisputed. He was not the one who presented the note or collected the money. He is the only Woods whose name appears in the record, who presumptively may have had any such authority. This testimony of Woods should not have been ignored. *St. L. I. M. & S. Ry. Co.* v. *Ramsey,* 96 Ark. 37, 131 S. W. 44; Ann. Cas. 1912B, 383; *St. L. I. M. & S. Ry. Co.* v. *Spillers,* 117 Ark. 483, 175 S. W. 517; *Walnut Ridge Merc. Co.* v. *Cohn,* 79 Ark. 338, 96 S. W. 413.

The remaining question as to proof of agency and authority of the agent by his own declarations is not new. The unbroken line of authorities in this State is to the effect that neither agency nor authority of the agent can be established by proof of the declarations of such alleged agent. *Daly* v. *Arkadelphia Milling Co.,* 126 Ark. 405, 413, 189 S. W. 1053. (See authorities there cited to support the text.) *Turner* v. *Huff,* 46 Ark. 222.

Therefore we must say that since there is no proof that any of the money arising out of this alleged payment of the note was ever received by the insurance company, or any of its officers, and there is no competent evidence of payment of the note to any one authorized to receive it, such payment as may have been made, if any, was not a payment to the insurance company, and would not operate to revive the lapsed policy, and the judgment rendered upon this theory was therefore erroneous.

The case has been thoroughly developed with every opportunity to present all available proof.

The judgment is therefore reversed, and the cause is dismissed.

JOHNSON, C. J., and HUMPHREYS, J., concur.

JOHNSON, C. J., (concurring). I concur only in the result reached by the majority. The law is, as I understand, that one who presents for payment a promissory note and delivers possession thereof to the maker has *prima facie* authority in the premises, but, when delivery of the instrument is not made to the maker, the presumption does not follow. The true rule is stated as follows in 2 C. J., p. 624, § 260.

"In the absence of actual authority, an agency to receive payment upon a note or security can be implied only where the one assuming such authority has possession of the instrument, and capacity to deliver the same upon payment, etc."

The majority opinion does not differentiate in this respect, and for this reason I cannot concur therein.