ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY
*v.* HUMBERT.

Opinion delivered December 11, 1911.

1. RAILROAD—LIABILITY FOR KILLING TRESPASSER ON TRACK.—A railway company is not liable for the killing of a trespasser on its track by a train where a trainman discovered his danger and gave the stop signal to the engineer, but the latter failed to catch the signal in time. (Page 534.)

2. NEGLIGENCE—EVIDENCE—SUFFICIENCY.—Where the testimony of the engineer that he did not catch the stop signal in time to avoid killing the plaintiff's intestate is reasonable and uncontradicted, the jury had no right arbitrarily to reject it. (Page 536.)

3. APPEAL AND ERROR—REVERSAL—DISMISSAL.—Where plaintiff's case was fully developed, and no additional testimony could be adduced in another trial tending to sustain the plaintiff's case, the court, on reversing judgment for plaintiff, will dismiss the action. (Page 536.)

Appeal from Saline Circuit Court; *W. H. Evans*, Judge; reversed.

*W. E. Hemingway, E. B. Kinsworthy, H. S. Powell* and *James H. Stevenson*, for appellant.

1. The deceased was a trespasser and entitled to none of the rights of a traveller on the highway or at a crossing. Testimony which related solely to the rights of a traveller on a highway and at a crossing, or rights he might have if a licensee on the tracks, and which had no bearing upon the issue of discovered peril, was misleading to the jury and prejudicial to appellant. 39 Ark. 24, 25, 27, 28; 83 Ark. 300, 301, 302; 95 Ark. 190, 192, 193, 194; 63 Ark. 65; 69 Ark. 380; 94 Ark. 524; 90 Ark. 278, 285

It is not sufficient to show that those in charge of the train could have seen the person on the track or could have seen him sooner than they did; but the plaintiff's evidence must show that they did actually see him in time to avoid

the injury by the use of ordinary care. 77 Ark 401; 82 Ark. 522, 525; 65 Ark. 429, 436.

2. The deceased being a trespasser on the track of the appellant, it owed him no duty save not to wantonly or wilfully injure him after discovering his presence and peril. The evidence is clear that the engineer did his full duty and exercised the full measure of ordinary and reasonable care under all the circumstances; and it is amply sufficient to absolve the lo kout man from any negligence after discovering the peril of the deceased. But, even if both the engineer and the lookout had been negligent, the concurring fault and negligence of deceased would bar recovery. 93 Ark. 24, 28; 83 Ark. 300; 95 Ark 190, 193, 194.

*Manning & Emerson,* for appellee.

1. Appellant, in its argument that certain testimony was not admissible because not relevant to the issue of discovered peril raised in the pleadings, ignores the other issues raised by the same pleadings. The evidence might be irrelevant and immaterial as to that issue, and yet be both relevant and material on the other issues. and therefore admissible. 1 Greenleaf, Ev. (15 ed.), § 51; 3 Rice on Ev. § 40 and authorities cited; 31 Cyc. 682; Wharton on Ev. § § 20, 21; 58 Cal. 163; 78 N. Y. 90; 21 Minn. 442; 76 Mich. 448; 129 Ga. 382; 59 S. E. 94; 51 So. 597; 74 Atl. (N. H.) 585; 77 Atl. (Me.) 537-40; 76 Pac. 255; 106 Pac. 629-32; 93 Minn 99; 100 N W. 653; 16 Cyc. 847-8; 18 Kan. 508; 8 Ore. 330; 58 Atl. (Me ) 774; 42 Ark. 542-54; 123 S W. (Tex.) 732

2. Appellant's contention that the court should have directed the jury to return a verdict in its favor because of there being no evidence to support a verdict against it falls to the ground perforce of its concession that, but for the admission of the alleged immaterial evidence, "the verdict might and very probably would have been different." If the evidence was such that reasonable men might reach different conclusions under it, it then became solely a question for the jury, and is sufficient to sustain the verdict. In determining whether the trial court erred in refusing to give a peremptory instruction against appellee, the testimony in his favor will be given its strongest probative force. 95 Ark. 560; 87 Ark. 628; 94 Ark. 478-80, and cases cited. Counsel's contention is that deceased was a

trespasser, that he was drunk and asleep upon appellant's track. If he was drunk and asleep upon the track, appellant's employees must have known immediately upon discovering him that he was not aware of his peril, and they could not presume that he would or could protect himself, but it was their duty to use a proper degree of care to avoid injury or killing him. 46 Ark. 513-23, and authorities cited; 36 Ark 376. The evidence is fully sufficient to sustain the finding of the jury that appellant's employees discovered the peril of deceased in time to have avoided killing him by the exercise of ordinary care and the use of appliances which they had at hand 69 Ark. 380-3; 89 Ark. 496, 500; 94 N. E. 206-10; 112 S. W. (Ark.) 739; 91 Ark. 14, 19; 90 Ark. 398-402.

McCulloch, C. J. Plaintiff's intestate, M. W. Duke, was run over and killed by a switch engine near the north end of the railroad bridge across the Arkansas River at Little Rock about 11 o'clock on the night of January 18, 1908, while he was lying on the track between the rails. He was apparently unconscious of his perilous position, and was either asleep or intoxicated, or both. Witnesses who were with him a short time before the occurrence, and parted from him at a boarding house a short distance away, testify that he was intoxicated, and this testimony is not contradicted. He was next seen when discovered lying on the track a few seconds before the occurrence by E. A. Tucker, the foreman of the switch crew, who was standing on the front foot-board of the engine. No one saw him get on the track.

It is conceded that Duke was guilty of negligence in lying down on the track, but plaintiff, as administrator of his estate, recovered damages below on the theory that the engineer discovered his perilous position in time, by the exercise of ordinary care, to have stopped the engine and avoided the killing. On no other theory is there any semblance of a claim that the recovery of damages can be justified. The engine was pulling ten empty passenger coaches and its speed, while crossing the bridge, going north from the Little Rock side, was between four and five miles per hour. There was testimony tending to show that, while running at that speed, the engine could have been stopped in the distance of eight or ten feet after the air was applied and the emergency brake thrown on. This

was contradicted by other witnesses, who testified that it would require 30 feet in which to stop such a train under the most favorable conditions, and more if the track was wet. The engineer testified that he did not see the man or any object on the track, but threw on the full emergency brake and stopped the train as quickly as possible when he received the stop-signal from Tucker, who, as before stated, was standing on the foot-board in front of the engine. He testified that he was keeping a lookout ahead down the track until he got in about 50 feet from the man's body, estimating the distance from where he afterwards discovered that the body was lying, and that he then blew the whistle calling for the signal from the puzzle-switch tender; that the steam escaping from the whistle obscured his view in front; that he heard some one holloa and, looking down, saw a lantern stop-signal from Tucker, and at once applied the emergency brake and stopped the train. The track was perfectly straight, and other witnesses testified that a man's body lying on the track could have been seen by the rays of the headlight for a considerable distance from the cab of the engine. There was no evidence, however, that the man was on the track before the steam from the whistle obscured the engineer's view. He may have fallen or rolled over on the track at that time. It was in the night-time, when objects near the track or even on the track were not easily discernible. Tucker testified that, about the time the engineer says he blew the whistle, he looked down the track and saw, about 45 or 50 feet ahead, an object on the track, which he could not make out as a man's body, but that he gave a violent stop-signal by swinging his lantern; that when the engineer failed to respond he continued swinging his lantern and holloed, but the air was not applied until the engine was over the body of the man. He said that he did not discover that the object on the track was a man until he got in about 20 or 25 feet of it. He did not state how far he was from the body when he holloed, nor how long after he gave the first stop signal before he holloed. At one point in his testimony, in response to a question as to what he did when he gave the signal for the immediate stopping of the train and it was not responded to by the air being applied or by the stopping of the coaches, he said: "I gave him another signal and holloed." At another point he said: "I saw he

didn't take the first signal, and I holloed and gave him another signal." At another point he said that when he saw that the engineer didn't stop he kept on giving the signal and holloed. He said that he never saw the engineer, and didn't know whether the latter had seen the stop signal until the air was applied after the engine got to the man's body. There is nothing in the testimony of Tucker to show that the engineer actually received the stop-signal in time to stop earlier. The only connection is the statement of the engineer, who says that he saw the signal after he heard the sound of the holloing. So the statement of the engineer that he applied the brakes as soon as he saw the signal is not contradicted by Tucker's testimony. The plaintiff introduced Tucker as a witness, and relies on his testimony to sustain the recovery, but it does not establish negligence on the part of the engineer after discovering the perilous situation of the man on the track, for the reason that he does not now show that the engineer saw the signal. The burden of proof was on the plaintiff to show that the engineer discovered the helpless man on the track before he received the danger signal in time to stop before striking him. *Jones* v. *St. Louis, I. M. & S. Ry. Co.,* 96 Ark. 366. This the plaintiff has not shown. The engineer's testimony is perfectly reasonable, and is uncontradicted. The jury had no right to arbitrarily reject it. *Railway* v. *Shoecraft,* 53 Ark. 96; *St. Louis, I. M. & S. Ry. Co.* v. *Landers,* 67 Ark. 514; *Kansas City So. Ry. Co.* v. *Lewis,* 80 Ark. 396. But, even if the testimony of the engineer be rejected, still there is no testimony sufficient to establish the fact that he saw the man on the track or saw the danger signal given by Tucker in time to avoid the killing. It is not claimed that a recovery can be based on negligence of Tucker, for the uncontradicted testimony shows that he gave the stop-signal as soon as he saw the man on the track.

We are of the opinion that the testimony is not legally sufficient to sustain a verdict in plaintiff's favor. The case was fully developed, and no additional testimony can be adduced in another trial tending to sustain the plaintiff's case. So it will be useless to remand it for a new trial. The judgment is therefore reversed, and the cause dismissed.