# Central of Georgia Ry. Co. *v.* Chambers.

## *Crossing Accident.*

(Decided June 17, 1915.   Rehearing denied July 2, 1915.
69 South. 518.)

1. *Appeal and Error; Subsequent Appeal; Law of Case.*—The decision of the Supreme Court as to the sufficiency of certain counts of the complaint is the law of the case on a subsequent trial and was properly followed by the trial court on the second trial.

2. *Railroads; Crossing Accident; Complaint.*—A count alleging that the servants of defendant's railroad who controlled the movement of a freight train, with knowledge of plaintiff's perilous position, and that to move the train would probably result in his injury, willfully or wantonly moved the cars, thereby causing injury to plaintiff while on the bumpers between freight cars on a public crossing, stated a cause of action as for wanton or intentional injury.

3. *Same; Contributory Negligence.*—It is not erroneous to sustain demurrers to pleas of contributory negligence filed to a complaint sufficiently alleging wanton or intentional injury.

4. *Appeal and Error; Harmless Error; Pleading.*—Where demurrers were overruled to other pleas setting up the same defense, and under which the same evidence was admissible, it was harmless error to sustain demurrers to similar pleas.

5. *Railroads; Crossing Accident; Evidence.*—Where the action was for injury suffered in an attempt to go between two freight cars of defendant's train on a crossing, and the complaint averred a custom on the part of defendant's servant to block the crossing, evidence for the plaintiff of such custom or usage, and of a custom of pedestrians to go over or under the train while it blocked the crossings, was properly admitted.

6. *Same; Blocking Crossing.*—Where a railroad blocks a public crossing with its train for an unreasonable length of time, it becomes a trespasser.

7. *Same; Crossing Accident; Proximate Cause.*—The act of a railroad in blocking a public crossing, and negligently delaying travel, renders it. liable only for the proximate consequence of such delay, and injury to one attempting to cross over the bumpers of two connecting freight cars cannot be said to be proximately caused by the blocking of the crossing.

8. *Same; Willful Injury.*—The fact that the agents of defendant could possibly have seen the plaintiff while attempting to cross between two freight cars while the train was standing across the crossing, and that plaintiff would be imperilled if the train was moved, was not sufficient to warrant the jury in finding that they did see plaintiff or know of his peril, especially when such servants

testified positively that they did not see plaintiff or know of his peril until after his injury.

9. *Evidence; Weight.*—The jury should not arbitrarily disregard uncontradicted evidence.

10. *Railroads; Crossing Accident; Wantonness.*—A railroad company cannot be charged with wantonness because of the acts of their servants unless the servants know of the existence of such conditions as make it likely or probable that injury will result from what they do or omit to do, and their intentional wrongful conduct shows a reckless indifference to the consequences; otherwise their conduct cannot be characterized as wanton, however negligent it may be.

APPEAL from Russell Circuit Court.

Heard before Hon. M. SOLLIE.

Action by Canty Chambers against the Central of Georgia Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

See, also, 183 Ala. 155, 62 South. 724.

The oral charge of the court, to which exception was reserved, is as follows: "If you believe from the evidence that the fireman was intrusted with the duty of giving the moving signal to the engineer, then if the train was permitted to stand across the public road crossing for more than a reasonable time, then after it had done so, it became the duty of the fireman before giving the moving signal to look out for pedestrians passing along the road at the crossing; and if you believe from the evidence that he did look out at and toward the crossing just before and at the time he gave the moving signal, it is for you, gentlemen, to determine from all the evidence whether or not, if he kept the lookout, he did see the plaintiff."

G. L. COMER, for appellant.

GLENN & DE GRAFFENRIED, and S. B. HATCHER, for appellee.

MAYFIELD, J.—Appellee, plaintiff below, lost his little toe and a part of the next to it while attempting

to cross over the bumpers of two connecting freight cars that were blocking a public road crossing in the town of Hatchachubbee, Ala.; and he sued the defendant railway company to recover his damages suffered in consequence of such injury. The action resulted in a verdict for $10,000, which amount, on the defendant's application for a new trial, was reduced by the trial court to $7,500, and judgment was rendered for the reduced amount. From the judgment the defendant prosecutes this appeal, and here assigns 100 errors on the part of the trial court, and in brief of counsel insists upon all. It would be almost an interminable task to attempt to write to each of these assignments, and would unduly extend the opinion. We shall therefore have to group those assignments which go practically to the same questions, and merely treat each group.

(1) The first assignment of error goes to the overruling of the demurrer of the appellant to the several counts of the complaint. The questions pertinent were fully discussed and were decided on the former appeal in this case (183 Ala. 155, 62 South. 724); and the trial court, on this trial, followed the decisions of this court on the former appeal, for the reasons assigned on the former appeal. There was no error in overruling the defendant's demurrer to any count of the complaint.

(2) On this trial the court treated each of the original counts as stating a cause of action as for simple negligence only, which was decided on the former appeal, but held that the additional count 10 stated a cause of action as for wanton or intentional injury; and as to these rulings we now find no error.

(3, 4) The next seven assignments of error go to rulings sustaining the demurrer to special pleas. There was certainly no error in sustaining the demurrer to the pleas in so far as they attempted to set up contributory

[Central of Georgia Ry. Co. v. Chambers.]

negligence as a defense to count 10, which declared as for wanton, willful, or intentional injury. In so far as the pleas numbered 5, 6, and 7 attempted to answer the counts for simple negligence, if there was error in sustaining the demurrer thereto (which we do not decide), it is made to appear from this record that no possible injury was done, or could have been done, the defendant (appellant here), for the reason that the demurrer was overruled as to pleas 2, 3, and 4, as amended, which pleas set up the identical defense attempted to be set up in each of the pleas numbered 5, 6 and 7. All the evidence was admissible under pleas 3, 4 and 5, which would have been admissible under any one of the pleas 5, 6, or 7, and if the plaintiff could not prove either one of the pleas 2, 3, or 4, then he could not have proved either 5, 6, or 7, as they each set up the same facts, only in varying language and phraseology. The legal effect of each of the pleas was the same; that is, that the plaintiff, though under 14 years of age, possessed such maturity and discretion beyond his years as enabled him to understand and appreciate the danger of his attempt to cross over the bumpers of the cars, and that he was therefore guilty of contributory negligence which proximately contributed to the injury complained of. The material facts set up in each of the six pleas as last amended, and as each was when the rulings herein complained of were made, were certainly in legal effect the same. Each plea contained matter not contained in the others, but this different matter was merely evidentiary of the material facts set up and relied on in each as a defense.

(5) The next 66 assignments of error—those from 9 to 74, inclusive—relate to the rulings of the trial court in permitting certain questions to be propounded to witnesses and allowing the same to be answered. All those assignments insisted upon involve but one ques-

tion, and that is: Was it competent and admissible for the plaintiff on this trial to prove a custom or usage, on the part of the servants and agents of the defendant, to block the public crossing in question, as it was blocked on the occasion of this injury? We think such evidence was clearly admissible and competent on this trial. Such a custom was expressly averred in the complaint, and hence evidence to prove or disprove the averment was proper; and it was certainly not reversible error to allow it, under the issues made by the pleadings. The custom of pedestrians to go over or under the trains while they were so blocking the crossing in question, in connection with the other evidence that this custom was known, or ought to have been known, to the defendant's agents and servants in charge or control of the train of cars in question, was for the same reason admissible.

(6) There was no error in the trial court's charging the jury that, if the defendant blocked the public crossing for an unreasonable length of time, it thereby became itself a trespasser. It was so held on the former appeal of this case.

After a careful reading of all the evidence shown by this record—which recites that it contains all the evidence—and after argument, oral and by brief, of able counsel for the appellant and the appellee, we have reached the conclusion that the trial court erred, to the prejudice of the defendant, in the oral charge, as to the question of wanton or willful injury as alleged in the tenth count. We are unable to find any evidence in this record which, if believed by the jury, would authorize them to find that the material allegation of count 10 was proven. The allegation to which we refer is to the effect that the agents or servants of the defendant, who controlled or managed the movement of the train on the occasion in question, "with knowledge of plaintiff's posi-

tion of peril between said cars, and with knowledge and present consciousness of his then condition, and that to move said train would probably result in injury to this plaintiff, willfully or wantonly caused said cars to be moved, thereby causing this plaintiff to be injured in his person while on the bumpers between sair cars over said public highway crossing, so that the foot of this plaintiff was mashed, bruised, and permanently disfigured," etc.

(7) There was certainly no direct proof of these material allegations, nor was there proof of any other facts which would authorize the jury to infer that the agents or servants of the defendant, on that occasion, were guilty of the wanton or willful conduct alleged. The blocking of the crossing, though wanton or willful, was not the proximate cause of plaintiff's injury. It was the starting of the train, while plaintiff was in the position of peril, which injured him. If the defendant had willfully continued to block the crossing until this good day, without ever moving the train, the injury complained of could not have happened; indeed, if it had kept the crossing blocked for a few moments longer, the injury would not have happened. In other words, the blocking of the crossing was only a remote, and not the proximate, cause of the injury. This very question was decided by this court in the case of *Stanton v. Louisville & Nashville Railroad Co.*, 91 Ala. 382, 8 South. 798, one headnote of which is as follows: "Whether a railroad company is not responsible for wrongfully or negligently delaying a traveler on the highway at a public road crossing, by allowing a train of cars to remain stationary on the track at the crossing, is not decided; but, if such liability exists, it extends only to the damages which are the natural consequences of the delay, and does not extend to damages caused by another train coming up, blowing off steam, frightening the traveler's horse, and causing him to run away."

And in the opinion it is said: "It is the general principle that the wrongful and negligent acts complained of must be the efficient cause of the damage sustained. Whether directly or indirectly, the damage must be the natural consequence of the wrong.—5 Amer. & Eng. Encyc. of Law, 5. The fright of the horse and its running away was not the natural consequence of permitting the cars to remain on the crossing. This may have contributed remotely to that result, by the delay of the plaintiff until another train reached the spot; but the efficient cause which frightened the horse and made it run away was the 'blowing off of steam' and 'unusual noise' of the train which came up while the plaintiff was waiting to cross. The damages resulting from the fright of the horse were too remote, as a consequence of the obstruction of the public road, to be visited upon the defendant corporation for that cause. We do not hold that a railroad may not be responsible for wrongfully or negligently delaying a person at a crossing; but the damages in such case must be the natural consequences of the delay, and not those produced by a subsequent, intervening, and efficient cause."—91 Ala. 386, 387, 8 South. 798, 799.

(8) The mere fact that the agents of the defendant could possibly have seen the peril of plaintiff, when the train was moved, or the signal given for it to be moved, is not sufficient to warrant the jury in finding, that they did so see him or know of his peril especially when all of these agents, five or six in number, swear positively that they did not see him or know of his peril until after the injury had happened. This would not be sufficient to show subsequent negligence, much less wanton or willful injury.

(9-11) There was, as we have said, no evidence in this case that persons in charge of the train in question saw,

or had actual knowledge of, the plaintiff's peril when the train was moved or ordered to be moved. No one is shown to have had actual knowledge of his presence, much less of his peril. The engineer and fireman could not have seen plaintiff while between the cars and on the bumpers, had they specially looked for him. There was no evidence that he was seen by any of these persons going into the position of peril. The mere fact that some of them looked in the direction of plaintiff about the time the train was moved was not sufficient to carry the question to the jury that they did see him in a position of peril. If the plaintiff had at that instant been between the cars, and on the bumpers, where he says he was, the cars would have prevented such persons from seeing him.

The facts do not bring the case within the rule announced in *Shelton's Case,* 136 Ala. 191, 34 South. 194; *Guest's Case,* 136 Ala. 353, 34 South. 968, and other cases relied upon, where the person injured was on the railroad track in front of an approaching train, and it was shown that those in charge of the train actually saw the person, or were looking in that direction, and so could hardly have failed to see him, and be thereby made conscious of his imminent peril. Nor is this case brought within the influence of that line of cases—*Peter's Case,* 135 Ala. 540, 33 South. 332, and those following it— where the person went on or across a railroad track at a place where the view was unobstructed, yet testified that he stopped, looked, and listened, but did not see, a nearby, approaching, car or train, which struck him before he could cross, or get off the track. In such cases the very laws of physics render it impossible that the testimony can be true. Neither courts nor juries should accept or regard such statements of witnesses, when the laws of nature render them utterly incredible and even impossible.

The evidence of the witnesses for the defendant in this case, that they did not see the plaintiff before the injury and that they were not conscious of his peril, was neither unnatural, incredible, nor impossible; and there was no evidence in conflict therewith, and the jury should not arbitrarily disregard it. Aside from the testimony of the agents or servants of the defendant in charge of the train, there was no evidence tending to show wantonness or willful injury. These witnesses each testified that he did not see the plaintiff or know of his peril. Then where is the evidence of wantonness or willful injury? If the jury should arbitrarily disregard uncontradicted testimony—which we have frequently decided they ought not to do—still there would be no evidence of wantonness, under the well-established rules of this and other courts on the subject.

One is not chargeable with wantonness unless he knows of the existence of such conditions as make it likely or probable that injury will result from what he does or omits to do, and his conscious and intentional wrongful conduct in the light of such knowledge evinces a reckless indifference to consequences. If there is neither such knowledge nor such reckless indifference to consequences, however negligent the conduct may be, it is not to be characterized as wanton.—*Peters v. South. Ry. Co.,* 135 Ala. 533, 33 South. 332; *Bessierre v. Ala. City, G. & A. R. R. Co.,* 179 Ala. 322, 60 South. 82; *Southern Ry. Co. v. Stewart,* 179 Ala. 304, 60 South. 927; *Liverett v. Nashville, C. & St. L. R.,* 186 Ala. 111, 65 South. 54. "Action induced by a mistaken inference of the lack of the danger involved in taking it is not the same thing as the heedless doing or omission to do something by one who is aware that harmful consequences are likely to ensue. While those in charge of the train, unwarrantably relying on the sufficiency of

[Central of Georgia Ry. Co. v. Chambers.]

the precautions they took and on travelers on the street apprehending the significance of the burning fuse, were guilty of negligence if they failed to give the signals required by the statute (Code, § 5473) at such a place, their conduct was not shown to have had the features of consciousness of the danger involved and reckless indifference to consequences."—*S. A. L. v. Hudgins*, 10 Ala. App. 585, 586, 65 South. 716; 7 Mayf. Dig. 628. It therefore follows that the general affirmative charge should have been given for the defendant as to the wanton count.

There was, however, ample evidence to carry the question of simple negligence to the jury, and likewise the questions whether or not the plaintiff, at the time of the injury, was a trespasser, and whether or not he was guilty of contributory negligence; so the affirmative charge for the defendant as to all the issues was properly refused.

As the case must be reversed and remanded on the question of wantonness, involving the determination of whether punitive damages are recoverable, it is not now proper to pass on the questions as to the refusal of a new trial and the excessiveness of the verdict as reduced by the trial judge.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and GARDNER, JJ., concur.