# 𝔕𝔦𝔠𝔥𝔪𝔬𝔫𝔡

## C. O. Petherbridge v. Princess Anne County.

### March 15, 1923.

1. Game—*Action by State Game Warden for fees for Killing Untagged Dogs—Evidence held Sufficient to Support Verdict of Jury Against Plaintiff's Claim.*—The instant case was an action against a county by a State game warden to collect his fees for killing untagged dogs within the county. The verdict was for the county and plaintiff assigned as error the action of the trial court in refusing to set aside the verdict as against the evidence and enter judgment for the plaintiff's claim. Plaintiff when testifying used a memorandum which purported to show on what days the dogs were killed, and plaintiff testified that this was the original memorandum made by him at the times he killed the dogs, but it developed before the jury, upon objection being made to the memorandum, that it was not in truth such original record, but only a memorandum made by the witness "to refresh his recollection." The memorandum was not even introduced in evidence, and the plaintiff affirmatively stated that he had no recollection whatever that a single dog was killed in the county. The only other evidence for plaintiff was the testimony of a witness that ten or twelve dogs were killed presumably in the county. Plaintiff's claim was for killing 187 dogs. There was testimony tending to show that plaintiff's claim that he killed eight dogs on a certain day was false, and there was testimony of the chairman of the county board of supervisors to the effect that he did not know that any dogs had been killed in the county.

   *Held:* That the evidence was sufficient to support a verdict for defendant.

2. Appeal and Error—*New Trials—Verdict Contrary to the Evidence—Credibility of Witnesses—Change in Law by Section 6363 of the Code of 1919.*—A number of cases have come to the Supreme Court of Appeals on certificates of the evidence since section 6263 of the Code of 1919 went into effect, and the court has been asked to set aside verdicts because contrary to the evidence, or without evidence to support them. The court has uniformly refused to do so where there was involved the credibility of witnesses whose testimony the jury might

reasonably believe, or the weight to be given to their testimony, or a question of the mere preponderance of the evidence. It is manifest, therefore, how slight change has been wrought from the law as it formerly stood by the difference in phraseology of section 6363 of the Code of 1919.

3. TRIAL—*Instructions—Remarks of Trial Court in Conflict with Instructions—Objection First Made on Appeal.*—In the instant case in the petition and reply brief, and in the oral argument for the plaintiff, objection was made to certain colloquies between the trial judge and the plaintiff in error while on the witness stand; and the position taken that the jury was misled adversely to the plaintiff by these remarks of the judge, and that this error was not cured by the instruction, because such remarks were in direct conflict with the instruction.

   *Held:* That while, if timely objection had been made to the remarks, the Supreme Court of Appeals might have felt constrained to reverse the case, yet as such objection was not made in the court below, the subject could not be dealt with upon appeal.

4. TRIAL—*Remarks of Court—Assignment of Error.*—While remarks of the trial judge to plaintiff while testifying as a witness, although doubtless made without any thought that they would influence the verdict, and when the judge was, for the moment, forgetful of the jealous care with which the rule on the subject in this State has, from the earliest times, forbidden the trial judge to express any opinion to the jury, except a hypothetical one, as to the rights of the parties, might be cause for reversal, if timely objection had been made, yet where there was no assignment of error on the point supported by a bill of exceptions or certificate, it cannot be considered for the first time on appeal.

Error to a judgment of the Circuit Court of Princess Anne county, on appeal from a decision of the board of supervisors. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

This is an action instituted by the plaintiff in error, C. O. Petherbridge (hereinafter called plaintiff), against the defendant in error (hereinafter called the defendant county), seeking to recover of the defendant county the amount of the plaintiff's claim, which was disallowed by the board of supervisors, for the sum of $467.50, for killing, during the period from May 10 to October 11, 1920,

inclusive, 187 untagged dogs in said county, on whom the license tax had not been paid, while acting as a State game warden, at $2.50 each, that being the fee allowed by the statute to game wardens for such killing of dogs and by the statute made payable by the county in which such dogs are killed.

There was a trial by jury which resulted in a verdict, and judgment accordingly entered, for the defendant, and the plaintiff assigns error.

The claim as presented to the board of supervisors and disallowed was an unitemized account, dated, signed and sworn to by the plaintiff on October 23, 1920, made out against the board of supervisors of the county for "capturing untagged dogs and destroying same, 187 at $2.50 each, $467.50."

On the trial the plaintiff introduced only two witnesses, who testified in support of his claim, himself and a witness named Stephens. For the defendant county there were two witnesses, the chairman of the board of supervisors and the game warden for Princess Anne county.

The plaintiff testified that his dog killing operations were carried on during the period covered by his claim in suit both in Norfolk and Princess Anne counties. That he did not have any system about it; some days he would go out and some days he did not; sometimes he would be engaged in killing dogs all day and some days only during a part of the day. That for the dogs he killed in Norfolk county, that county paid him; that he presented the bill or bills to the board of supervisors of that county for the killing of those dogs and they paid for them—for how many does not appear from the record before us.

In the opening of his testimony in chief the plaintiff used an itemized memorandum, which purported to

show on what days the 187 dogs were killed; and how many each day; that they were killed on thirty-three different days from May 10th to October 11th, inclusive; as many as twelve being stated as killed on two of the days in July, and nine, ten and eleven on other days in that month; thirteen on one day in August, seven, eight and nine on other days in that month; eight on two separate days in September, one of these days being September 23rd; and lesser numbers of dogs on the other days; and the plaintiff first testified positively that the memorandum was the original record made by him at the times he killed the dogs. It developed before the jury, upon objection being made to the memorandum by counsel for the defendant county, that it was in truth not such original record, but only a memorandum made by the witness "to refresh his recollection," and was used by the witness for that purpose only, as stated by his counsel. And on cross-examination the plaintiff admitted that, as a matter of fact, he had not kept any record of the time and place when the dogs were killed, making the following statement giving the reason for his not having kept such a record, viz.: "The department does not require us to keep a record of when and where the dogs were killed. That is why I never kept it."

Moreover, the plaintiff, by his testimony, admitted that he had no personal recollection at the time he testified of the killing of a single dog in Princess Anne county. He depended wholly upon the said memorandum to prove the killing of the dogs in such county as claimed by him. He was asked if he could tell the location of a single dog that he killed in Princess Anne county? He answered: "It would be impossible." He was particularly interrogated about the item on said memorandum of eight dogs entered as killed on Septem-

ber 23rd, and said that he remembered that day and remembered being at a magistrate's trial "in the morning" of that day, "prosecuting a dove case;" but couldn't remember killing a single dog that day.

Stephens, the only witness for the plaintiff other than the plaintiff himself, testified that he worked for the plaintiff in June, August and September, 1920, driving a truck used by the plaintiff in hauling away dogs killed in Norfolk and Princess Anne counties. He undertook to testify to only ten or twelve dogs killed (presumably meaning by the plaintiff, but he does not say so) in Princess Anne county, and merely made a general statement as to that, saying that ten or twelve were killed in that county "to my knowing."

The plaintiff was thereupon recalled to the witness stand and testified that Stephens was not with him on all of his dog-killing trips; that three other persons were with him "on different occasions" (on how many "different occasions" he does not say); but he gave a very lame excuse before the jury for not having them as witnesses on the trial. He did not have any of them summoned as witnesses. He said that he went to the home of one of these persons "last week, two or three times to get him, but his people told me he was down near Suffolk, with a log gang, getting out timber;" that another of these persons was a mail carrier at the time of the trial, and that he "tried to get him Saturday, to get him to come here. I went to the postoffice, but they said I could not get him." He made no excuse for not having the other person mentioned as a witness on the trial.

The chairman of the board of supervisors of the defendant county, a witness for such defendant, testified that he did not know that any dogs had been killed in that county. On objection of the plaintiff, by counsel, the statement of this witness before the jury of the rea-

son why the claim of the plaintiff was disallowed, namely, that he "did not think he (the plaintiff) had killed that many dogs," was stricken from the evidence.

The testimony of the game warden of Princess Anne county, the other witness for the defendant county, tended to show that the plaintiff killed no dogs on September 23rd, the day on which the said memorandum contained the item of eight dogs killed by him in such county. This witness testified that he was at the magistrate's trial above mentioned that day. That he saw the plaintiff there about one o'clock of such day and that plaintiff stayed there from that time "until nearly night." That witness did not see plaintiff kill any dogs; witness adding, however, the following: "He might have killed them after I saw him. It was nearly sundown when we left there."

The general bill of exceptions containing the evidence shows the following colloquies between the trial judge and the plaintiff, while the latter was on the witness stand:

On record page 25:

"Q. Where was it—I have got four dogs myself. I have got one that runs five miles away. Suppose you would find my dog in the county you would shoot him?

"No, sir; not a good dog.

"Q. Please tell me the difference between a good dog?

"A. We are supposed to take up all the dogs if we cannot find the owners.

"Q. You are supposed to get a warrant for the man. If you find my dog five miles away from home, and nobody knows whose dog it is, what would you do with him?

"A. We would have to take him up.

"By the court: Not my dog; no, you would not."

Again (record, page 25, lines 28 to 33.)

"By the court:

"Q. How can you tell the difference between a good dog and a bad dog?    I had some friends at my house and they looked at an Airedale that cost $100.00 and wanted to know what kind of cur that was?

"A. A mangy dog has no home, dogs like that I would not think they would want to keep a dog in that condition."

And again (record, page 26, lines 6 to 9):

"By the court:

"Q. How many children have you?

"A. None.

"By the court: Like myself, you had better be raising children."

No objection, however, was made to these remarks of the judge at the time, nor at any time afterwards before the trial court, not even on the motion for a new trial; and there is no bill of exceptions or certificate in the record bringing this subject before the appellate court for review.

Upon the conclusion of the evidence the court instructed the jury as follows (this being the only instruction given):

"The court instructs the jury that if they believe from the evidence that the appellant, C. O. Petherbridge, killed, in Princess Anne county, one hundred and eighty-seven (187) dogs running at large in said county, on which license had not been paid, and that said dogs had no known ownership, then they shall find for the appellant a fee of $2.50 for each dog so killed."

*H. Laurence Brooke* and *N. T. Green*, for the plaintiff in error.

*E. J. Smith*, for the defendant in error.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

There is but one assignment of error and that is that the trial court erred in refusing to set aside the verdict of the jury for the defendant county and enter judgment for the plaintiff for the full amount of his claim, on the ground that the testimony for the plaintiff proved his case and that the verdict was contrary to the evidence, in that the jury, from mere caprice and without any just cause therefor, disregarded the testimony for the plaintiff. The sole question for our decision, therefore, is this:

1. Is the assignment of error just stated well taken?

The question must be answered in the negative.

[1] As appears from the statement preceding this opinion, the memorandum used by the plaintiff in the course of his testimony merely to refresh his memory, was not even introduced in evidence; and the plaintiff affirmatively stated that he had no personal recollection whatever that a single dog was killed in Princess Anne county. So that there was no evidence whatever before the jury to sustain any part of the plaintiff's claim, except the single general statement of the witness, Stephens, introduced by the plaintiff as a witness in his behalf, who testified that "ten or twelve dogs" were killed (presumably meaning by the plaintiff, although he does not say so) in Princess Anne county. Now, in view of the fact that the jury might have reasonably considered that this witness was under the influence of the plaintiff; that the breakdown of the abortive attempt of the plaintiff to maintain in his testimony before the jury that he was testifying from an original memorandum made at the time the alleged dogs were killed, which he admitted on cross-examination was not such a memo-

randum, was sufficient in itself to justify the jury in believing that the plaintiff was wholly unreliable and that his claim was fraudulent; and in view of the further consideration that the jury were the sole judges of the credibility of the witness, Stephens, as affected by bias in favor of the plaintiff; by the indefinite character of his testimony, as it appears in the record; and by his demeanor on the witness stand, of which we can form no idea, and which, of course, does not and cannot appear from the record; the jury may have reasonably wholly disbelieved Stephens' testimony with respect to the "ten or twelve dogs." So that, as the jury may have reasonably found that there was no reliable testimony whatever, and, hence, no evidence before them, to sustain a verdict for the plaintiff, under the settled rule on the subject we must so find.

Moreover, there was the testimony for the defendant county of the game warden for Princess Anne county, and the admissions of the plaintiff himself as to his engagements on one of the days on which he claimed to have killed eight of the dogs included in his account, which tended to show that the account of the plaintiff was a false account.

Further: There was the testimony for the defendant county of the chairman of its board of supervisors, to the effect that he didn't know that any dogs had been killed in Princess Anne county. It seems reasonable to suppose that, if the number of dogs had been killed by the plaintiff, as claimed by him, within the period as claimed, the chairman of the board of supervisors of the county would have known something about it.

There were, also, the other discrediting circumstances of the failure of the plaintiff to introduce any testimony to sustain his claim, beyond the aforesaid testimony of Stephens as to ten or twelve of the dogs, and his lame excuses for not producing other testimony.

[2] As said by the court, in its opinion delivered by Judge Burks, in *Director General* v. *McCall*, 133 Va. 487, 113 S. E. 835: "A number of cases have come to this court on certificates of evidence since the Code went into effect, and we have been asked to set aside verdicts because contrary to the evidence, or without evidence to support them. We have uniformly refused to do so where there was involved the credibility of witnesses, whose testimony the jury might reasonably have believed, or the weight to be given to their testimony, or a question of the mere preponderance of the evidence." Citing *Lorillard Co.* v. *Clay*, 127 Va. 734, 104 S. E. 384; *Graham* v. *Com.*, 127· Va.. 808, 103 S. E. 565; *Smyth Bros.* v. *Beresford*, 128 Va. 137, 175, 104 S. E. 371; *Queens Ins. Co.* v. *Perkinson*, 129 Va. 216, 222, 105 S. E. 580; *Ambrose* v. *Com.*, 129 Va. 763, 765, 106 S. E. 348, 14 A. L. R. 1268; *Tucker Sanatorium* v. *Cohn*, 129 Va. 575, 591, 106 S. E. 355; *Du Pont Co.* v. *Brown*, 129 Va. 112, 121, 105 S. E. 660; *Clinchfield Coal Corp.* v. *Hayter*, 130 Va. 711, 714, 108 S. E. 854; *Forbes & Co.* v. *So. Cotton Oil Co.*, 130 Va. 245, 108 S. E. 15, and cases cited therein.

The following authorities are cited and relied on for the plaintiff .to sustain the aforesaid assignment of error: Two Virginia cases, namely: *Southern Amusement Co.* v. *Ferrell*, 125 Va. 429, 437, 99 S. E. 716; *Palmer* v. *Showalter*, 126 Va. 306, 101 S. E. 136, and the following cases from other jurisdictions, namely: *St. Louis, etc., R. Co.* v. *Humbert*, 101 Ark. 532, 142 S. W. 1122, 1123; *Kansas City, etc., R. Co.* v. *Deaton* (Miss.), 9 So. 828; *St. Louis etc., R. Co.* v. *Ramsay*, 96 Ark. 37, 131 S. W. 44, 46, Ann. Cas. 1912B, 383; *Same* v. *Spillers*, 117 Ark. 483, 175 S. W. 517, 518; *Same* v. *Landers*, 67 Ark. 514, 55 S. W. 940, 941; *Georgia, etc., R. Co.* v. *Harris*, 83 Ga. 393, 9 S. E. 786; *Georgia Railroad & Banking Co.* v.

*Wall,* 80 Ga. 202, 7 S. E. 639, 640; *Mobile, etc., R. Co.* v. *Jackson,* 92 Miss. 517, 46 So. 142, 143; *Grand Fraternity* v. *Melton,* 102 Tex. 399, 117 S. W. 788, 789; *Central of Ga. Ry. Co.* v. *Chambers,* 194 Ala. 152, 69 So. 518, 520; *Robertson* v. *Dodge,* 28 Ill. 161, 81 Am. Dec. 267; *Larson* v. *Glos,* 235 Ill. 584, 85 N. E. 926, 927; *Lomer* v. *Meeker,* 25 N. Y. 361, 363; *Hull* v. *Littauer,* 162 N. Y. 569, 57 N. E. 102; *In re Miller's Will,* 49 Ore. 452, 90 Pac. 1002, 1007, 124 Am. St. Rep. 1051, 14 Ann. Cas. 277; *Skillern* v. *Baker,* 82 Ark. 86, 100 S. W. 764, 118 Am. St. Rep. 52, 12 Ann. Cas. 243; *Whitlock* v. *Wynn Co.* 15 Ga. App. 38, 82 S. E. 664, 665; *Engmann* v. *Estate of Immel,* 59 Wis. 249, 18 N. W. 182, 183; *Bowen* v. *Worumbo,* 105 Me. 31, 72 Atl. 685, 686; *Loon* v. *Jones,* 113 Me. 563, 92 Atl. 1006, 1007; and *Brown* v. *Johnson & Johnson,* 132 Ky. 70, 116 S. W. 273, 274. We find nothing in any of these decisions in conflict with the rule in Virginia on the subject under consideration as it is stated in the above quotation from *Director General* v. *McCall,* or in conflict with the conclusion we have reached and stated above with respect to the verdict in the instant case.

[3] In the petition and reply brief, and in the oral argument for the plaintiff, mention is made of certain colloquies between the trial judge and the plaintiff while on the witness stand, which are set forth in the statement preceding this opinion; and the position taken for the plaintiff on this subject is that the jury was misled adversely to plaintiff by these remarks of the judge; and that this error was not cured by the instruction given upon the conclusion of the introduction of evidence, because such remarks were in direct conflict with the instruction, and that this, in effect, created a conflict in the directions to the jury. And in the reply brief for the plaintiff, on the subject of the remarks of

the judge, this is said: "It was this attitude of the court—this plain direction to the jury—that explains, as nothing else in the record can explain, the verdict of the jury."

[4] As above pointed out, the verdict of the jury may be reasonably explained, as we think, upon other grounds.   We do not wish, however, to be understood as approving of the action of the learned trial judge in making the remarks mentioned; although they were doubtless made without any thought that they would influence the verdict, and when, for the moment, the judge was forgetful of the jealous care with which the rule on the subject in this State has, from the earliest times, forbidden the trial judge to express any opinion to the jury, except a hypothetical one, as to the rights of the parties.   Hence we will say, that if timely objection had been made to such remarks, and they had not been corrected, by express reference to them, and there had been an assignment of error on that point supported by a bill of exceptions or certificate, bringing the matter before us for review, we might have felt constrained to reverse the case.   But as the case stands the subject cannot be regarded as before us and therefore cannot be dealt with by us.   However, had objection been made to the remarks in question before the trial court they would no doubt have been promptly corrected and so explicitly as to have left no room for them to have misled the jury.   At any rate such an objection cannot be considered when, as here, it is made for the first time in the appellate court.

The case will be affirmed.

*Affirmed.*